# Pennsylvania and New York Railroad and Canal Company *versus* Bunnell.

1. Every court of record has at common law power of amendment; it does not depend upon statute.

2. Under the statutes of amendment, it is of right; at common law it is discretionary.

3. The general power of amendment exists both before and after judgment.

4. A petition for viewers for damages was presented under the Act of February 19th 1849 (Railroad Act): upon exceptions to their report the proceedings were set aside and the applicants permitted to file an " amended petition:" *Held*, this was not a distinct petition, but an amendment to the original petition.

5. In the trial of an issue on an appeal from the assessment of railroad damages, *Held*, to be proper to ask " what was the fair market value of this farm immediately after the construction and successful operation of this road on it only by such construction."

6. Market value of land is not a question of science or skill upon which only an expert can give an opinion.

7. Persons of the neighborhood are presumed to have sufficient knowledge of the market value of the land.

8. A company made a canal through the plaintiff's land, they afterwards made a railroad through the same land; the fact that the canal was a cheap and sufficient means of conveying his products, was material in the assessment of damages; that the defendants owned and might abandon the canal did not vary the case.

9. It was immaterial what damages the plaintiff received from defendants for the construction of the canal.

10. It was proper to ask: " How much, if any, does the burden of fencing the railroad detract from the value of the farm ?"

11. The fact that after the construction of the railroad, a post-office was moved to a point on it much more convenient to the plaintiff, was not material in assessing damages.

12. Evidence of the prices at which land in the neighborhood had been recently sold was inadmissible.

13. In his first petition the plaintiff averred that he had sustained damages to the amount of $3000; in his amended petition he set out no particular amount: *Held*, that this was persuasive evidence as to the amount of the damages, but did not estop him from claiming more.

March 13th 1871.    Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.    WILLIAMS, J., at Nisi Prius.

Certiorari to the Court of Common Pleas of *Wyoming county :* To January Term 1871.

This was a proceeding by James Bunnell for the assessment of damages sustained by him by the location and construction of the railroad of the Pennsylvania and New York Canal and Railroad company through his premises.

The petition was filed January 23d 1869; it set out that petitioner was "* * * the owner of a certain tract of land, containing about twenty-two acres, bounded on the north by John Bunnell, Jr., east by the North Branch Canal, south by Charles Place, west by the highway, and that the Pennsylvania and New York Canal and Railroad Company, in pursuance of their act of incor-

poration have surveyed, &c., * * * a route for a railroad through his said land, for the distance of one hundred and twenty rods over, through and along his said land, and taken possession of the same without making compensation to your petitioner for the same, and against his consent, and by the route of such railroad, so located, * * * your petitioner has sustained damages in the taking of his land so as aforesaid, to his said land, the sum of $3000." * * *

The prayer was for viewers under the Acts of Assembly.

Viewers were accordingly appointed.

On the 17th of April 1869 the viewers reported: " * * * that there will be taken * * * for said railroad sixty feet in width for a distance of one hundred and twenty-two perches, as marked on the accompanying plot or draft, and the quantity of the land so taken is two acres and eight tenths, that the same is bottom farm land, cleared, cultivated and of good quality, and upon which there is a good orchard, and of the value of $300 per acre, being altogether of the value of $840. The said viewers further report that having had a due regard to, and making a just allowance for the advantages which have resulted, or which seem likely to result to the said James Bunnell in consequence of the making and opening of said railroad, and of the construction of the works connected therewith, and after having made a fair and just comparison of the said advantages and disadvantages, they estimate and determine that the said James Bunnell has sustained damages, including the taking and occupying of his land as above stated, to the amount of $2500." * * *

On the same day judgment was entered against the company for the amount awarded.

On the 20th of April the report was confirmed nisi.

The railroad company, May 3d 1859, filed exceptions to the report of the viewers, viz. :—

1. The petition does not show that the said claimant could not agree with the said company as to the amount of damages.

2. The farm of said claimant is not sufficiently described in said petition or in the report of the viewers.

3. In the petition the quantity of the land through which the said railroad passes is incorrectly stated, in that it is set forth as containing but twenty-two acres, whereas, it contains about two hundred acres, by reason whereof the said viewers were liable to be misled in their estimate of the advantages accrued or likely to accrue to the said claimant from the construction of said railroad through the said farm.

4. There nowhere appears either in the petition or in the report, or in any part of the record in said case, any sufficient description of the land taken," &c., by the railroad company.

5. The report does not sufficiently show upon what grounds the viewers award to the claimant the sum of $1660, in addition to the

[Penna. & N. Y. Railroad Co. *v.* Bunnell.]

sum awarded by them for the land actually taken and occupied by the company.

6. The written report of the viewers does not agree with the plot or draft annexed to their report, and they award damages for more land than is contained in " sixty feet in width for a distance of one hundred and twenty-two perches," this being reported by them as the amount of land taken.

7. The viewers, in their report, do not note the fact of their adjournment from the 16th of April to the 17th of the said month; whereas the report shows that the last-mentioned date was the time that the said report was made.

8. The damages awarded are excessive.

On the 20th of August 1869, on motion of the company, the court ordered the judgment to be stricken off, "having been improperly entered."

The court, Elwell, P. J., sustained the 3d, 4th and 5th exceptions, and overruled the 2d, 6th, 7th and 8th exceptions. As to the 1st, he said it was not necessary then to decide it, as leave would be given to file an amended petition, and said that viewers would not thereafter be appointed, unless it *appeared* that the parties could not agree.

On the 25th of September 1869 the proceedings were set aside, and " leave granted to amend the petition, and new view awarded."

Bunnell, on the 16th of November 1869, presented an " amended petition," viz. :—

" That the Pennsylvania and New York Canal and Railroad Company have surveyed, &c., * * * a route for a railroad, * * * and have entered upon the lands of your petitioner, * * * through which said route passes, and have established and constructed thereon a railroad ; that he has applied to the said Pennsylvania and New York Canal and Railroad Company, and has endeavored to agree with it for the compensation proper for the damages done or likely to be done, &c., * * * and that after such application and endeavor, your petitioner cannot agree with the company," &c.

The company objected to the appointment of viewers on this petition, averring that it was irregular. The objection was overruled, and viewers were appointed.

On the 11th of December 1869, the viewers reported * * * " That there has been taken and occupied of the land of the said James Bunnell, for constructing and establishment of said railroad, as follows : beginning," &c. (giving the courses and distances and adjoiners) * * * " as marked on the accompanying plot or draft ; and the quantity of land so taken is three acres and twenty-nine perches ; that the same is good bottom farm land, cleared and cultivated, and of good quality, and upon which there were twenty-five good bearing apple-trees,. and of the value of $200 per acre,

being altogether of the value of $636.25. The said viewers further report that, having had a due regard to and making just allowance for the advantages which have resulted, or which seem likely to result to the said James Bunnell, in consequence of the making and opening said railroad and of the construction of works connected therewith, and after having made a fair and just comparison of the advantages and disadvantages, which consist of almost entire destruction of about twenty-one acres of other land than that taken and used by the said railroad, they estimate and determine that the said James Bunnell has sustained damages, including the taking and occupying of his land as above stated, to the amount of $2450." * * *

The viewers annexed a draft to their report.

On the 13th of December 1869, Bunnell appealed from the award of the viewers.

On the 18th of December the company filed exceptions, viz. :—

1. The plaintiff had no right to file his amended petition in this case upon which the viewers, making said report, were appointed at the stage of the proceedings at which it was filed.

2. The amendment so made is not sufficient for the purposes intended by it.

3. The errors appearing on the record in this case have not been corrected by the amended petition.

4. In said report of viewers the description of the land taken by the railroad company is insufficient and incorrect.

5. The land taken by the company as described in the within report of the viewers does not correspond with the lines as marked on the draft annexed to the said report.

6. The viewers report the lines of the railroad by angles, while the line as located by the company, and as marked on the ground, is a curved line.

7. In said report the advantages and disadvantages of the railroad to the petitioner are not sufficiently set forth.

8. The damages awarded are excessive.

Same day the company appealed from the award of the viewers.

On the 25th of May 1870, the court, Elwell, P. J., delivered the following opinion on the exceptions.

"The amended petition contains all that is necessary to constitute a cause of action or valid complaint under the statute. It was filed by leave of court, and the question of its regularity was raised at the time of appointing the viewers. The practice adopted can do the defendant no harm, having been twice decided by the court in this case it is not open for consideration.

"The inaccuracies of description, referred to in the 4th and 6th exceptions, are more apparent than real. It arises from adopting the *courses* of the lines as returned by the viewers as the only

guide to location; whereas, the courses as shown by the draft accompanying the report, are fixed and certain points on the line of adjoining owners established by actual measurement from the canal, on one side, and the public highway, or travelled road, on the other.

" If there be, as alleged by the defendant, an error in the return of the courses from one of these corners to another, the means of correcting it is furnished by the report itself, and the mistake is not fatal to the proceedings. The variation of the compass from the true course can be easily ascertained. In fact, has already been ascertained in this case, as shown by the testimony of the engineer called as witness by the defendant.

" The beginning point and the termini of the lines at either end on the complainant's farm being given, by reference to other fixed and permanent public monuments, the courses can and must be corrected and controlled by them.

" It was said, per KNOX, J., in Railroad *v.* Porters, 5 Casey 169, that, 'where the line is not straight, the courses and distances should be given, and the boundaries stated.' It is now contended by the defendant's counsel that something more than this is required. It is true, as contended, the degree of curvature might be ascertained upon the ground, and stated in the report, or by application to the railroad company. (The latter is the safer and better practice, and parties, if they would avoid difficult and unnecessary questions, will avail themselves of it.) But, with the distances on the centre line, and the courses, I apprehend an artist would readily ascertain the degree of curvature.

" When the ground of the road *has been taken*, and the road *established* and *constructed* its location at the time of the views, is that to which the question of damage is applied, and of course may be always resorted to as explanatory of the return as made. These views dispose of the exceptions numbered 4 and 6.

" I am unable to find any essential difference between the draft and report as alleged in the 5th exception.

" On a former hearing between these parties, the matters contained in the 7th and 8th exceptions were argued, considered and decided by the court. The reargument has not convinced me that my decision was erroneous. The statute does not require an itemized statement of advantages and disadvantages. I think the court might, by *rule*, require this of viewers, but where it is not done *before* the view and making report, it is not such an omission as requires the court to set aside these proceedings. These exceptions are dismissed and the report of the viewers confirmed."

August 23d 1870, on the application of the plaintiff, the court directed that the cause be put at issue as in action of trespass *q. c. f.*, in which Bunnell should be plaintiff and the railroad company defendant.

[Penna. & N. Y. Railroad Co. *v.* Bunnell.]

On the 19th of September 1860, a certiorari from the Supreme Court at the instance of the company, was filed.

They assigned nine errors; eight being to the overruling of their exceptions; the ninth to the confirmation of the report of the viewers.

*Little & Sittser*, for certiorari.—There is no provision in the statute for filing an amended petition; when one claims a privilege to be tried by a special tribunal created by statute and in derogation of the common law, he is held to a strict construction of it: Zack *v.* Pennsylvania Railroad Co., 1 Casey 396. The description in the viewers' return ought to contain the length and breadth of the line of the road; and, where it is not straight, the courses and distances and boundaries: Pennsylvania Railroad Co. *v.* Porter, 5 Casey 168. The ground of the finding is not sufficiently set forth in the report: O'Hara *v.* Pennsylvania Railroad Co., 1 Casey 446; Reitenbaugh *v.* Chester Valley Railroad Co., 9 Harris 100.

The reporter received no paper book from the other side.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 8th 1871.

This was a proceeding in the court below to assess damages for land taken by the Pennsylvania and New York Canal and Railroad Company, under the eleventh section of the Act of Assembly of February 19th 1849, Pamph. L. 84. Exceptions were filed to the report of the viewers, the dismissal of which has been assigned here for error. It will not be necessary to consider them *seriatim*— a few general principles will dispose of them all.

The idea that all amendment must depend upon statute is essentially erroneous. Every court of record has at common law a power of amendment, the difference between which and that which depends upon the statutes of amendment and jeofails, is that it is a matter within the legal discretion of the court, while the latter is of right. All mistakes originally were amendable the same term, because the record is a roll of that term, and so in the breast of the court during the whole term, and then a new roll might be brought in the cause, and consequently the same roll may be amended: Bacon's Abr., title *Amendment* A. But this limitation, that it must be in the same term, was not very strictly adhered to, for as long as the cause was *in paper*, that is, at any time before final judgment was entered and the roll made up, amendment might be made, although the term had gone by: 1 Tidd's Practice 697. Hence, in Bondfield *v.* Milner, 2 Burr. 1098, a *qui tam* action for usury, and therefore not within the statutes of amendment, it was allowed, Lord Mansfield saying: " The rule is, that whilst all is *in paper* you

may amend." It has been accordingly laid down as a general principle, well supported by the decided cases, that every court of record has power over its own records and proceedings as long as they remain incomplete, and until final judgment is rendered, and until that time it is the established practice in such courts to regard all actions, whether on the docket of the existing or a former term, as within the jurisdiction and control of the court: 1 Tidd's Practice 161, note B, and cases there cited. Any such distinctions, however, have been entirely repudiated in this state, and the general power of amendment asserted to exist in the court whether before or after judgment. "The old notion," says Chief Justice GIBSON, "that the record remains in the breast of the court only till the end of the term, has yielded to necessity, convenience, and common sense. Countless instances of amendment after the term, but ostensibly made during it, are to be found in our own books and those of our neighbors. The power of the court to amend being established, the conclusiveness of the record as amended follows of course. Even were the amendment erroneous, the regularity of it could not be inquired of collaterally; and not being under the Act of 1806, it could not be inquired of even directly on a writ of error:" Rhoads *v.* The Commonwealth, 3 Harris 276. This disposes of the first exception.

The second and third exceptions complain of the insufficiency of the amended petition, but do not specify wherein. It seems from the printed argument that it was considered that the amended petition was to be taken by itself and not in connection with the original petition. It is plain, however, that although styled an amended petition, it was, in reality, an amendment to the petition, and taking both together we consider them as sufficient. The fourth, fifth, sixth and seventh exceptions are satisfactorily disposed of in the opinion of the learned judge below; and the eighth, that the damages awarded are excessive, is clearly not a matter of review here.                    Proceedings affirmed.

On the 30th of August 1871, the cause was removed by the defendants to the Court of Common Pleas of Susquehanna county, where the issue on the appeal was tried, October 13th 1874, before Streeter, P. J.

The testimony of the plaintiff was that he was the owner of a farm of 270 acres of land, through which the railroad was completed in the spring of 1869; before the road was built the farm was worth $28,000.

1. It was proposed to ask: "What was the fair market value of this farm immediately after the construction and successful operation of this road upon it only as affected by such construction.

The offer was objected to, because

"1. It leaves the witness to allow in his estimate of value depreciation from consequential and speculative causes.

"2. It does not limit him to purely legal subjects of depreciation, or injury from the road.

"3. It is incompetent for him to speak of market value without first showing whether he had any means of knowing such value, *i. e.*, legal knowledge on that subject."

The offer was admitted and a bill of exceptions sealed.

He said after the road was completed his farm was worth but $21,000. It was injured by its being cut into two parts, leaving two narrow strips between the canal of the defendants and their railroad; the land between the railroad and canal was about seven acres, there were about three acres of the land taken by the railroad; the land was very productive.

2. The plaintiff offered to prove that the canal was at the time of the completion of this road in successful operation, and also the means of transportation of the products from his farm, for the purpose of showing how the farm was situated when the injury was done, and also as a means of assisting the jury in arriving at its value.

Objected to, because,

"1. This subject of inquiry is incompetent.

"2. It opens a collateral question that is irrelevant in this issue.

"3. The canal being owned by defendants, the damages, if any, caused by it, have been already paid by defendant.

"4. The defendants had a right to abandon the canal and put this other improvement in its place, and their doing so is not now to be complained of. They are not to claim, as ground of damage, benefits of the canal (which they made defendants pay for), so making double profit out of defendants."

The offer was admitted, and a bill of exceptions sealed.

Plaintiff said that the canal was in operation at the time the railroad was constructed, about 25 rods from his house; he transported his crops and received coal by it much cheaper than by the railroad; the construction of the railroad injured his farm by taking away a large number of apple trees also.

3. It was proposed to ask "how much, if any, does the burden of fencing the railroad detract from the value of the farm?"

This was objected to by the defendant.

"1. The question, in order properly, to guard the answer of the plaintiff (witness), should be, 'how much less would the whole farm sell for in market, on account of additional fencing made necessary by the road?'

"2. The witness has no right to estimate a sum, the interest of which will keep up the fence."

The offer was admitted, and a bill of exceptions sealed.

[Penna. & N. Y. Railroad Co. *v.* Bunnell.]

The plaintiff said the additional burden of fencing resulting from the construction of the railroad would be about $2136. The amount of fencing would be about 240 rods. No fence would be safe but a stone fence, which would have to be quarried a mile and a quarter away, and drawn there. It would cost $8 per rod. Keeping up the fence would be another item. There was a board fence put up by defendants, but it was not sufficient to protect the cattle from the railroad.

4. Defendants, on cross-examination, proposed to prove by the plaintiff that the defendants owned the canal; that witness opposed its construction, claiming it as a damage to him; that it overflowed a part of the said seven acres; and that he received of this defendant $3400 damages on account of said canal.

Plaintiff objected to the offer: that it is irrelevant and incompetent; nothing is claimed in this suit for any damage done by the canal.

5. Also, to ask him if he had not stated that the canal was a great damage to his farm; if he did not say so to the agents of the company, and demand of them $10,000 on account of that injury.

Both offers were objected to and rejected, and bills of exceptions sealed.

6. Plaintiff called W. B. Harding, and proposed to ask him " what was the fair market value of the farm in 1866 or 1867, before the railroad was projected and laid upon it."

This was objected to by defendants, on the ground that " the witness is not competent to speak of value until the ground is laid, by showing that he had some legal knowledge of value that qualifies him to speak."

The offer was admitted, and a bill of exceptions sealed.

He fixed the value of the farm at about $27,000 before the road was made. He testified to many particulars in which it was injured by the construction of the railroad, and fixed its value after the construction of the road at $21,000.

On cross-examination, the defendants proposed to ask him,

7. " If, before the road was made, the nearest post-office to Bunnell's was not at Russell Hill, four miles off, and if it was not now at Vosburg Station, and if that was no benefit to the place?"

This was objected to by the plaintiff, rejected by the court, and a bill of exceptions sealed.

A number of witnesses for the plaintiff testified as to the value of the farm before and after the construction of the railroad, fixing it at about the sum the plaintiff and Harding had given, and stating about the same particulars as making up the damage. Amongst others,

8. Plaintiff called J. Lee, and proposed to ask him " whether the location and the construction of this railroad upon the farm

[Penna. & N. Y. Railroad Co. *v.* Bunnell.]

of plaintiff was an advantage or disadvantage to it, and in what way."

This was objected to by defendants, because:

" 1. This question draws out an answer that allows for remote and speculative injuries.

" 2. The witness is not to judge what are legal damages and what not.

" 3. Nor is he to judge and swear what is advantage and what is disadvantage."

The offer was admitted, and a bill of exceptions sealed.

Defendants examined a number of witnesses, in answer to the plaintiff's case. Some of them fixed the damages at a very much smaller sum than the plaintiff's witnesses, and the others thought no damages at all had been sustained by the plaintiff.

They gave evidence of the prices which had been offered for other farms in the neighborhood, and for which some of them had been sold.

On motion of plaintiff's attorney the court struck out all the evidence relating to the prices offered for other farms in the neighborhood, and for which some had been sold.

The following are points of defendants with their answers :—

" 1. Plaintiff's sworn petition and claim, which was the origin and foundation of the present proceedings and trial, limiting his claim to $3000, it should stand as the limit here."

" This point is answered in the negative. The fact stated in this point is persuasive evidence against the plaintiff, and 'should be considered by the jury ; but we cannot say, as matter of law, that the plaintiff is limited to the amount set out in his petition.

" 4. The cost of making the railroad fences should not be allowed, for the company made them ; nor should the cost of stone wall (where the stone is one and a half miles off) be reckoned by the jury at $8 per rod, or at any price ; nor should a sum be set aside and allowed, the interest of which would keep it in repair. But it should be, how much less would the farm bring in market, by reason of the burden of keeping it up ?"

" This point is affirmed, with this qualification : If the fence built by the company was a poor fence, and not an ordinary and reasonably good one, the jury may take into consideration the expense of making it such ; as well as the expense of keeping it in repair ; and say how much this burden of repairing and keeping in repair will detract from the market value of the whole property."

The court further charged:—

" Was the land of the plaintiff injured in its market value or benefited by this improvement? This is the simple inquiry. If injured, to what extent ? Compensation is to be allowed to the amount of damage sustained by the owner of the property. [In arriving at a conclusion you may properly inquire what the pro-

[Penna. & N. Y. Railroad Co. *v.* Bunnell.]

perty would have sold for immediately before and after the road was constructed and in successful operation; being particular to consider whether the increase in value, if any, arises from the improvement in question, or from some other cause.]

"If you find from the evidence that the plaintiff's land was increased in value by the construction of the road, that increase in value may be set off against the damages inflicted upon the property by its construction. Consider, then, the real damages done to the property, which are direct and tangible, not consequential, speculative, and contingent; and then inquire whether the whole property was increased or diminished in value by means of the construction of the railroad. In other words, what was the market value of the land just before the road was projected; and what was its market value when the road was completed and in successful operation, as affected by the construction of the road? The difference, if there were any, in favor of the plaintiff, is the amount he is entitled to recover, with the interest from the time the company entered upon and took possession of his land."

The verdict was for the plaintiff for $4080.

The defendants removed the record to the Supreme Court, by writ of error No. 104, to January Term 1875.

They assigned for error:—

1. Admitting the evidence mentioned in the first bill of exceptions.

2. That mentioned in the sixth bill of exceptions.

3. That mentioned in the eighth bill of exceptions.

4. That mentioned in the second bill of exceptions.

5, 6. Rejecting the offers of defendant mentioned in fifth and sixth bills of exceptions.

7. Admitting the evidence mentioned in the third bill of exceptions.

8. Rejecting the offer of defendant mentioned in the seventh bill of exceptions.

9. Striking out the evidence of defendant in relation to prices which had been offered for other farms in the neighborhood, and for which some of them had been sold.

10. The answer to defendants' first point.

11. The qualification of the answer to the defendants' fourth point.

12. The part of the charge in brackets.

This writ of error was argued in the Supreme Court, March 17th 1876, before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ. Mr. Justice MERCUR, having been of counsel in the case, did not sit.

*R. B. Little* and *J. E. Gowen,* for plaintiffs in error.—Direct injuries only are to be regarded; those consequential are to be rejected: Cleveland & Pittsburg Railroad Co. *v.* Speer, 6 P. F. Smith 326; Watson *v.* Pittsburg & Connellsville Railroad Co., 1

[Penna. & N. Y. Railroad Co. *v.* Bunnell.]

Wright 469. The opinion of witnesses must be preceded by evidence that they are persons of skill, &c. : Carr *v.* Northern Liberties, 11 Casey 324; Searle *v.* Lackawanna & B. Railroad Co., 9 Id. 63; Railroad Co. *v.* Hiester, 8 Barr 450; White Deer Creek Imp. Co. *v.* Sassaman, 17 P. F. Smith 421.

As to the fencing, the question should have been, "How much less would the whole farm sell for in the market on account of additional fencing made necessary by the road:" Delaware Railroad Co. *v.* Burson, 11 P. F. Smith 380.

The first point should have been affirmed. No declaration is necessary after an appeal: Lehigh Valley Railroad Co. *v.* Lazarus, 4 Casey 203. The sum mentioned in the petition is the amount claimed, and the issue is to try its validity. The amount claimed in a declaration binds the plaintiff, even in a common-law action.

*W. H. Jessup*, for defendant in error.—The market value of property must depend on the opinion of witnesses : Brown *v.* Corey, 7 Wright 506. The true measure of damages is the difference of the market value before and after the construction of the road : Watson *v.* Pittsburgh & Conn. Railroad, 1 Wright 481; Schuylkill Navigation Co. *v.* Thoburn, 7 S. & R. 411.

The cost of additional necessary fencing is to be taken into consideration, as being the direct result of the construction of the road: Watson *v.* Pittsburgh & Conn. Railroad Co., 1 Wright 480; Brown *v.* Corey, 7 Id. 505; Western Penna. Railroad *v.* Hill, 6 P. F. Smith 460; Patten *v.* Northern Central Railroad, 9 Casey 426. Evidence of the price obtained for neighboring property was properly stricken out : E. Penna. Railroad *v.* Hiester, 4 Wright 53; Chapin *v.* Boston & Portland Railroad, 6 Cushing 422; Upton *v.* S. Reading Railroad, 8 Id. 600; Wyman *v.* Lee and Cambr. Railroad, 13 Metc. 327.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 8th 1876.

The first two assignments of error are to the admission of an offer by the plaintiff below, to ask a witness what was the fair market value of the plaintiff's farm before and after the construction of the road upon it, only as affected by such construction. The objection was that it left the witness to allow speculative and consequential causes of depreciation, instead of purely legal ones, in his estimate. That the true measure of damages is the difference between the market value of the property before and after the construction of the road, so far as that difference was caused by the construction, is not denied. It is not easy to see how the question could have been more accurately framed. Market value is what the property would sell for. As was said by the court, in Schuylkill Navigation Co. *v.* Thoburn, 7 S. & R. 411,

[Penna. & N. Y. Railroad Co. *v.* Bunnell.]

" The only safe rule is to inquire what would the property, unaffected by the obstruction, have sold for at the time the injury was committed? What would it have sold for as affected by the injury? The difference is the true measure of compensation." This accords with all that has been held in subsequent cases, of which it will be enough to refer to Brown *v.* Corey, 7 Wright 495; Delaware, Lackawanna & Western Railroad Co. *v.* Burson, 11 P. F. Smith 369; East Pennsylvania Railroad Co. *v.* Hottenstine, 11 Wright 28. Another objection was, that it did not appear that the witnesses had competent knowledge to speak upon the subject. The market value of land is not a question of science and skill, upon which only an expert can give an opinion. Persons living in the neighborhood may be presumed to have a sufficient knowledge of the market value of property with the location and character of the land in question. Whether their opinion has any proper ground to rest upon, or is mere conjecture, can be brought out upon cross-examination. Such opinions have always been received. " It is a kind of evidence," said Chief Justice TILGHMAN, in Kellogg *v.* Krauser, 14 S. & R. 142, " so commonly admitted, without dispute or objection, that I have no doubt of its legality:" Brown *v.* Corey, 7 Wright 506; Pennsylvania Railroad Co. *v.* Henderson, 1 P. F. Smith, 321.

The 3d assignment is, that the plaintiff was allowed to ask a witness whether the location and construction of this railroad upon the plaintiff's farm was an advantage or disadvantage to it, and in what way. It seems to be considered that this question calls for an opinion which would embrace law as well as fact. It may be that there are consequential damages for which the law allows no recovery. But when the witness is asked in what way the road was an advantage or disadvantage, surely the answer must show whether it would fall within the rule. It would be hard to frame a question that would not either be open to this objection or to a more decisive one, of being leading: White Deer Creek Improvement Co. *v.* Sassaman, 17 P. F. Smith 421.

The 4th, 5th and 6th errors assigned may be considered together. There was no inconsistency in the rulings of the court. The fact that before the railroad was constructed the canal afforded the plaintiff a cheap and sufficient means of conveying his products to market, was surely material; and the fact that it belonged to the defendants and might be abandoned by them, did not vary the aspect of the case. In the damages which the plaintiff originally received for the construction of the canal, it is to be presumed that the advantage he derived from it as a highway to market was duly considered. It may be that the abandonment of the canal by the defendants was *damnum absque injuria.* But the fact that it was there was an element in the assessment of the damages which was important. Nor was it material how much the plaintiff had demanded or received for the construction of the canal.

[Penna. & N. Y. Railroad Co. *v.* Bunnell.]

As to the 7th assignment, the question "how much (if any) does the burden of fencing the railroad detract from the value of the farm?" was entirely proper. Value meant market value. That was what the attention of the witness had been called to just before. The question then was the same as that which the learned counsel for the defendants thought ought to have been put: "How much less would the whole farm sell for in market on account of additional fencing made necessary by the road?" The question was in the very words used in the charge of the judge below, and afterwards in this court, in Delaware Railroad Co. *v.* Burson, 11 P. F. Smith 380.

We find no error in the rejection of the evidence that after the construction of the railroad the post-office was moved to a point nearer to the farm. That could not have affected the market value, or if it did, it is not easy to see how it was brought about by the construction of the railroad. It might be removed by the government at any time.

As to the 9th error, which relates to the striking out of the defendant's evidence in relation to the prices offered and paid for other properties in the neighborhood, it is sufficient to say that this ruling of the learned judge below is fully supported by the determination of this court in East Pennsylvania *v.* Hiester, 4 Wright 53, in which it was held that in such a proceeding as this evidence of the price paid or amount received for land in the neighborhood in particular is inadmissible. The only proper test is the opinion of witnesses as to the value of the land taken, in view of its location and productiveness, its market value, or the general selling price of land in the neighborhood.

We are of opinion that the answer of the court to the defendants' first point was correct. The plaintiff was not concluded by the amount claimed in his first petition, which the court granted him leave to amend. That the court had power to allow the amendment is clear: Pennsylvania Railroad Co. *v.* German Lutheran Congregation, 3 P. F. Smith 445. The learned judge properly admitted it as persuasive evidence to the jury of the estimate the plaintiff had himself put upon his damages.

The qualification of the affirmance of the defendants' fourth point was entirely right, in view of the evidence in regard to the fence erected by the defendants as not sufficient for the purpose.

We do not fully understand the criticism made in the 13th assignment to that part of the charge in which the court instructed the jury to be "particular to inquire whether the increase in value came from the railroad or some other cause." It is not objected that it was wrong, but that it was emphatic. That rather involves a question of taste as to style, which we do not sit here to consider. But the clause thus extracted and objected to forms but part of the sentence, and the whole, taken together, is not even subject to

the objection of being too emphatic. It was but a very proper caution to the jury. The judge said: "In arriving at a conclusion you may properly inquire what the property would have sold for immediately before and after the road was constructed and in successful operation, being particular to consider whether the increase in value, if any, arises from the improvement in question, or from some other cause."

On the whole we find no error in the record.

Judgment affirmed.