## Jones v. Erie & Wyoming Valley R. R. Co., Appellant.

[Marked to be reported.]

*Railroads—Occupation of streets—Additional servitude.*

When the commonwealth authorizes the construction of a railroad upon a line which makes it necessary to cross a public highway, the grant is subject to two limitations; one in favor of the public for the preservation of the way; the other in favor of the owner, which requires that no additional servitude shall be imposed upon the land covered by the public easement. The construction of the railroad over the street imposes a new servitude on the land occupied by the public easement, for which the owner is entitled to compensation.

*Railroad bridge over highway—Measure of damages.*

A railroad company owned the diagonally opposite corner lots at the intersection of two public streets. It built abutments on its own land at each corner, and, with the consent of the city, threw a bridge from one abutment to the other, the height of the bridge above the street being twenty-three feet. The bridge overhung no land except what was included within the limits of the streets. The plaintiff owned a dwelling-house situated at one of the other corners.

*Held,* that the only element of damages was the additional servitude if any, imposed upon plaintiff's property, such, for example, as the exclusion of light and air from his dwelling.

The possibility of the vacation of the streets may be so remote as not to be worth considering; but the extent to which the new servitude really injures the property is a question for the consideration of the jury: Per WILLIAMS, J.

The amount of the verdict in such a case is not to be fixed by a comparison of the value of the plaintiff's property before the defendant's railroad was built, and after. The mere proximity of a railroad may render dwelling-houses less desirable, and diminish their market value without imposing any liability on the railroad company for the loss sustained by their owners.

*Obstruction of access—Danger from fright by horses.*

It is not an obstruction of access to a property abutting on a street where there is an overhead railroad that persons with wagons or carriages might be deterred from approaching the property from fear that their horses would be frightened by the trains above them.

*Expert testimony as to value of property.*

Expert testimony is not necessary to determine the value of the property. All persons familiar with the property, who have formed an opinion, are competent to testify as to its value.

Argued Feb. 22, 1892.   Appeals, No. 259, Jan. T., 1891, by defendant, from judgment of C. P. Lackawanna Co., Oct T., 1888, No. 643, on verdict for plaintiff, John P. Jones.   Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Trespass to recover damages for injuries to dwelling-houses alleged to have been caused by the construction of defendant's railroad across a public street.

The facts appear by the opinion of the Supreme Court.   The evidence showed that defendant was incorporated in 1886.

On the trial, before CONNOLLY, J., plaintiff was asked: " Q. What effect has the fire in the building, setting the building on fire ?   A. It would be dangerous."  · Objected to; objection overruled and exception. [1]

H. B. Lackey, a witness for plaintiff, was asked : " Q. What was a fair market value of this property prior to the construction and operation of this road in 1886 and 1887 ?   Counsel for defendant : Q. Did you know the fair market value of that property in 1886?   A. I think I did; yes, sir.   Q. Did you buy and sell before that time?   A. No.   Q. How did you know, then, the market value of that property in 1886 ?   A. From the value of property being sold there along the street, in my judgment, and from what I have seen others buy.   Q. Now, did you have any knowledge of your own of any property transfers there before 1886 ?   A. Not by buying property in that vicinity; no, sir.   Q. Then, whatever you know about it you heard somebody say.   A. I have heard say and from those that bought property there."   Counsel for defendant objected to the competency of the witness.   Objection overruled and exception. [2]

The same witness was asked : " Q. What was a fair market

value for that property after the road was constructed as affected by the construction and operation of the road?  A. About seven or eight thousand dollars."

Counsel for defendant object to this question.  As the question is framed it calls upon the witness to state his opinion as to the effect on this property of the lawful operation of the road.  This is irrelevant and immaterial and is damnum absque injuria and cannot be taken into account by this court and jury.  Objection overruled and exception. [3]

Thomas Lyddon, a witness for plaintiff, was asked:  " Q.  Mr. Lyddon, whether you think you are sufficiently conversant with the selling-price of the land as to give an opinion as to its market value prior to the construction of the road and its market value subsequent to the construction of the road as affected by the construction and operation of the road ? "

Counsel for defendant object because witness has already testified he is not conversant with the selling price of land in this locality at and about the time of the construction of this road, and also has testified in such a manner as to show that he is clearly incompetent to express an opinion on this subject.

The Court: The force and weight of his testimony will be entirely for the jury.  Exception. [4]   This witness had testified that he estimated the value by what he would give for it as an investment; that he lived half a mile away; was as well acquainted with the market value there as anywhere else; did not know selling price in neighborhood of this property.   This evidence was not recited in the assignment of error.

John T. Fitzpatrick, a witness for plaintiff, was asked:

" Q. What was the fair market value of this property in 1886 before the construction of the Erie & Wyoming Valley Railroad ? "

Counsel for defendant object and desire to ask the witness a question as to his competency.

The Court: I think the more orderly way is to take the testimony except where it is objected to and then you can cross-examine as to his means of knowledge afterwards, and if you show by cross-examination that he don't come up to the standard, we will strike his evidence out.

Objected to because witness has not been shown to be competent to express an opinion as to the value of this property prior to the construction of the road.

" Q. Now I ask you what was the fair market value of this property in 1886 before the construction of the railroad?

Same objection; objection overruled and exception. [5]

C. M. Price, a witness for defendant, was asked, on cross-examination after he had been examined in chief as to the rental paid by him before and after the construction of this road:

" Q. Would that house be worth more if the railroad had not been constructed and operated there?

Objected to for the reason that it is not cross-examination, first; and, second, that it has no connection whatever with the testimony elicited from the witness on direct examination.   It does not refer to the same subject-matter even.   Objection overruled, and exception. [6]

Witness answered that he was no judge of the value of the property, but he thought it would affect the rental value.

Jas. M. Benedict and Jas. Watts, witnesses for defendant, having been examined as the preceding witness, were asked on cross-examination: " Q. Would the rental value of the property you live in be greater if the road were not constructed and operated in so close proximity to the house?"

Counsel object to that because the witnesses have already testified that they paid the same rent before that they now pay since the construction of the road, and further because the question is not cross-examination and irrelevant and immaterial.   Objection overruled and exception.

The witnesses answered that they thought it would. [7, 8]

The court charged in part as follows, by CONNOLLY, J.:

[" The material question to be determined by you in this case is: Was the property of John P. Jones, the plaintiff, injured by reason of the construction of this bridge?   He claims that, by reason of its construction and maintenance, he has been deprived of the usual means of ingress and egress to and from his property.   This you will determine as a fact.] [9]

" The measure of damages to which the plaintiff is entitled in this case, if you find, from the evidence and the facts, that he is entitled to damages, is the value of the property immediately preceding the taking of it, or the erection of this bridge by the company, and what it was worth immediately thereafter; that is the true measure of damages, and that will be

your guide, in case you find in favor of the plaintiff and that must be found by you from the evidence as sworn to by the witnesses. . . .

"If you find in favor of the plaintiff, you will state in your verdict the amount that you think he is honestly entitled to, and you may add interest on that from the time the bridge was constructed, which, I think it is testified, was some time in 1887, but your verdict shall be in globo, in whole; if you find for the plaintiff, you will include the interest in the amount as entirety.

"[In ascertaining the amount of the damages, you may take into consideration the noise, confusion and dirt that is caused there, if any, and the injury which it caused to this property by reason of the running and operating of that road.] [10]

Defendant presented the following points, inter alia:

"2. Under the pleadings and evidence in this case, the defendant is not shown to be a corporation or 'invested with the privilege of taking private property for public use'—the constitutional provision, therefore, cannot apply to this controversy." Refused. [11]

"5. The plaintiff in the present case claiming damages only for consequential injuries occasioned by the construction and operation of the defendant's railroad, under the evidence in this case cannot recover, and your verdict must be for defendant." Refused. [12]

"6. The property of the plaintiff being separated from the railroad of the defendant by the width of twenty feet of Washington avenue and New street, and said railroad in no way interfering with the ingress or egress to and from his lot, there is no liability on the part of defendant for alleged consequential damages to said property. *Answer:* This point we refuse to affirm as drawn. We leave it to the jury to find the fact, whether or not there was an interference to the plaintiff's ingress and egress to and from his lot." [13]

"7. The uncontradicted evidence being that the property of the plaintiff is situated at the north corner of Washington avenue and New street, public highways of the city of Scranton, on the opposite side from the railroad of defendant, being a distance of twenty feet from the bridge of defendant at its nearest point, and there being no evidence that any of the

property of the plaintiff was taken, injured or destroyed by the construction of the said bridge crossing Washington avenue and New street diagonally, your verdict must be for the defendant. *Answer :* We refuse to affirm this point as presented, and leave the fact to the jury as to whether there was an injury to plaintiff's property." [14]

" 8. The constitutional provision applies only to injuries sustained by the construction or enlargement of the works of a corporation or individual vested with the right of taking private property for public use, and cannot be extended so as to cover injuries sustained on account of the lawful operation and use of said works." Refused. [15]

" 10. The evidence in this case showing injuries or inconvenience to plaintiff's property, the result merely of the lawful operation or use of the defendant's railroad, the case comes under the maxim *damnum absque injuria* and your verdict must be for the defendant." Refused. [16]

" 11. The plaintiff's property being situated in a thickly built portion of the city of Scranton, and upon the opposite side of a frequented public highway, the defendant is not responsible for the consequences to the plaintiff's property of the proper and careful operation of its road." Refused. [17]

" 12. The construction of the bridge by defendant, diagonally across Washington avenue and New street, twenty feet above the grade of the same and on a triangle of air over that portion of said street and avenue in front of plaintiff's property, distant at its nearest point twenty feet therefrom, under all the evidence of this case is no obstruction to free access of said property and is not a legal wrong or injury. *Answer :* We refuse to affirm this point, and leave the facts stated in it to the consideration of the jury." [18]

" 13. There is no evidence in this case of actual obstruction to either Washington avenue or New street in front of plaintiff's property, and the uncontradicted evidence shows that there is no prevention of free access to the same at all times. Therefore your verdict must be for the defendant. *Answer :* We also leave the facts as stated in this point to the jury. With this qualification we refuse to affirm this point." [19]

" 14. Under all the evidence in this case your verdict must be for the defendant. *Answer:* This point we refuse to affirm,

and leave the question solely as one of fact to you. If you find this plaintiff has not been damaged by the erection, construction and maintenance of this bridge across Washington avenue, your verdict should be for the defendant. If you find that it has injured the plaintiff's property, then you shall say by your verdict to what extent." [20]

Verdict and judgment for plaintiff for $3,350. Defendant appealed.

*Errors assigned* were (1–8) rulings on evidence, quoting bills of exceptions and evidence as above; (9, 10) portions of charge in brackets, quoting them; (11–20) answers to points, quoting points and answers.

*Everett Warren, Edward N. Willard* with him, for appellant.—Evidence of danger from sparks may be offered in a case of this kind: Lehigh Valley R. R. v. Lazarus, 28 Pa. 203; Sunbury & Erie R. R. v. Hummell, 27 Pa. 99; Pittsburgh B. & B. R. R. v. McCloskey, 16 W. N. 561; Pittsburgh Junction R. v. McCutcheon, 18 W. N. 527.

The witnesses as to value of property were not properly qualified: Watson v. Pittsburgh & Connellsville R. R., 37 Pa. 469; Pittsburgh V. & C. Ry. v. Vance, 115 Pa. 325. This was not farm land, where a different rule prevails; so that Curtin v. Nittany Valley R. R., 26 W. N. 161, does not apply.

The question put to Dr. Lackey, and complained of in the third assignment, was improper, as it covered any time subsequent to the construction of the railroad: Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411.

The witness Fitzpatrick should have been tested as to his competency, before being permitted to give his opinion as to values. Such evidence tends to prejudice the jury, and its withdrawal does not cure the fault of its admission: Huntingdon & B. T. M. R. R. & Coal Co. v. Decker, 82 Pa. 119; P. R. R. v. Butler, 57 Pa. 335; D. & H. C. Co. v. Barnes et al., 31 Pa. 193; Shaeffer v. Kreitzer, 6 Bin. 430; Nash v. Gilkeson, 5 S. & R. 352; Ingham v. Crary, 1 P. & W. 389.

It was improper to admit evidence showing that the building of a railroad affected rental values, and that they would have been much larger if the road had never been built.

There was no evidence that the plaintiff's access to his prem-

ises had been impaired, and it was error for the court to submit this as a question of fact to the jury.

There was nothing in the pleadings or evidence to show that the defendant was invested with the privilege of taking private property for public use.   Plaintiff is therefore relegated to his common law rights : Edmundson v. P. M. & Y. R. R. Co., 111 Pa. 320 ; but at common law he had no rights : Struthers v. Dunkirk W. & P. Ry., 87 Pa. 285.

Plaintiff's property was not injured in any peculiar or exceptional way by the construction of the railroad.   All the other property in the vicinity was affected in the same way. Under these circumstances plaintiff cannot recover : Pa. R. R. v. Lippincott, 116 Pa. 472; Pa. R. R. v. Marchant, 119 Pa. 541.

It is believed that in every case to be found in the books where a railroad company was held bound to compensate for injury to property not taken, the injury was a definite physical impairment of some clear right connected with the property, such as the obstruction of light, loosening of walls by vibration or interference with right of access.

The cases relied upon by the plaintiff are not in point.   In all of them there was some actual, positive, visible injury.   The case at bar shows (1) no injury whatever in the construction of defendant's bridge and road ; (2) no easement of plaintiff interfered with nor any physical damage to his property ; (3) no obstruction at all times to free ingress and egress to and from plaintiff's lot ; (4) no legal wrongs or injuries within the meaning of the constitutional provision.

The fact that the land lies near the location of the railroad and is thereby rendered less desirable for dwelling purposes is not an element of damage : Proprietors of Locks v. Nashua & Lowell R. R., 20 Cush. 385 ; Pa. R. R. v. Lippincott, 116 Pa. 472; Pittsburgh & Lake Erie R. R. v. Jones, 111 Pa. 204.

The constitution provides only for compensation arising from the construction of the railroad.   There can be no compensation for injury to person or property (unaccompanied with negligence) arising from the operation or use of the road as distinguished from its construction : New Castle & Franklin R. R. v. McChesney, 85 Pa. 522.

*S. P. Price* and *H. M. Hannah,* for appellee.—Witnesses as to the value of city property need not be experts. The competency of the plaintiff's witnesses as to values is fully sustained by Curtin v. Nittany R. R., 135 Pa. 20. All of the witnesses understood that they were speaking of the time of the construction of the road, in making their estimates.

From the caption of the case, the declaration and the pleadings, it appears very clearly that defendant was a corporation.

Prior to the constitution of 1874, corporations having the right of eminent domain were exempted from claims for consequential damages because they took land in the name of the state: Monongahela Nav. Co. v. Coons, 6 W. & S. 101; Henry v. Bridge Co., 8 W. & S. 85; N. Y. & E. R. R. v. Young, 33 Pa. 175. The constitution put these corporations upon the same footing as other corporations and private individuals: Edmundson v. P. M. & Y. R. R., 111 Pa. 320; Pa. R. R. v. Lippincott, 116 Pa. 483; Pa. R. R. v. Marchant, 119 Pa. 555.

The railroad company having placed a bridge over land in which the plaintiff owns the right of soil, it is liable to him for damages. Plaintiff is owner of everything above and below the surface.

Plaintiff was injured in his access to his building, and under the decisions of this court he is entitled to damages: Pa. R. R. v. Duncan, 111 Pa. 354; Pa. S. V. R. R. v. Ziemer, 124 Pa. 560; Chester Co. v. Brower, 117 Pa. 647; Pa. S. V. R. R. v. Walsh, 124 Pa. 544.

OPINION BY MR. JUSTICE WILLIAMS, October 3, 1892.

This appeal presents several important questions. One of these does not seem to have arisen heretofore in this state. In New York and some other of our sister states it has been considered and decided; but these decisions are influenced by the legislation peculiar to the jurisdiction in which they have been made, and are not as helpful as under other circumstances they might be. In the case now before us we have the following facts: The plaintiff, Jones, is the owner of a piece of land lying in the northeast corner made by the crossing at right angles of Washington avenue and New street in the city of Scranton. His front upon Washington avenue is sixty-three feet, and upon New street ninety-five feet. In the corner standing back

a few feet from the streets he has a double dwelling-house, and he has one or more dwelling-houses further out New street.   The southeast corner, which is directly across Washington avenue from the plaintiff's double house, is owned by the defendant company, as is the northwest corner which is directly across New street.   On each of these corners it has erected a substantial stone abutment about twenty feet high, upon which it supports an iron bridge eighteen feet wide, that spans the intersection of the streets below in a diagonal direction.   This bridge is an overhead crossing for the defendant's line of railroad, and the tracks upon it are about twenty-three feet above the surface of the streets below.   The centre of the bridge is about twenty-seven feet from the corner of plaintiff's lot and about forty feet from the nearest corner of his double dwelling-house.   The right of way of the railroad company as the law would define it would reach over upon the corner of the lot about three feet and overhang a triangular piece of ground beyond the street lines having that depth at the corner.   The defendant has however released its right to this corner and defined the extent of its right of way so as to exclude therefrom any portion of the plaintiff's land outside the streets over which its bridge is suspended.   The situation of the plaintiff's land and double dwelling-house, of the defendant's abutments, bridge and right of way as now defined, and of the streets, is shown by the diagram on the following page.

After the overhead crossing was completed and occupied by the defendant, this suit was brought to recover consequential damages which he alleges he has sustained by reason of the construction and use of it.   The defendant denies the right to a recovery, alleging, first, that it has taken, injured or destroyed no portion of the plaintiff's property in the construction of its crossing ; and, next, that it has a clear legal right to operate its line of road in the manner contemplated by its charter and commonly employed by railroad companies without liability therefor.

The first of these positions makes it necessary to inquire into the nature and extent of the title which the defendant acquired in these public streets by virtue of its charter, and the consent of the city of Scranton to construct an overhead crossing at this point.   It is well understood that when the

state enters upon the land of a private owner by virtue of its right of eminent domain for the purpose of laying out a public

highway, it acquires an easement in and upon the land so entered for the purpose of public travel. The injury, if any, which the owner suffers is estimated in damages and compensation is made him. The highway so opened passes under the care of the municipal division of the state in which it is located. The fee remains in the former owner but is bound by the servitude which the entry by the commonwealth imposed, so that the owner cannot interfere with the free use by the public of the land appropriated to the highway; nor can he assert his title to, or exercise any control over, such land in hostility to the public use or easement. The title to the highway is in the commonwealth as the representative of that portion of her citizens interested in its use. The duty to maintain it and to protect the public in its use rests on the municipality. The public easement is broad enough to include the various modes of travel in common use, and to admit such new and improved modes as the public may adopt; subject only to this necessary

limitation that the new modes adopted must not be destructive of, or inconsistent with, the use of the highway for the purposes and in the manner, for which it was intended; nor with the municipal control over it.

Now when the commonwealth authorizes the construction of a railroad upon a line which makes it necessary to cross one or more public highways, it authorizes its grantee by a necessary implication to enter and use such highways for such purpose. This grant is however subject to two limitations; one in favor of the public, as already stated, for the preservation of the way; the other in favor of the owner, which requires that no additional servitude shall be imposed upon the land covered by the public easement. If the first limitation be violated so that the way is lost to the public, another must be provided to take its place. If the second be violated so that the owner is subjected to new and additional burdens he is entitled to compensation for the injury actually sustained. It follows, that the railroad company desiring to cross the streets of a city must apply to the city for leave, and for the conditions deemed necessary to secure the public convenience and safety. This being done, the railroad company may lawfully enter upon and cross a public highway without liability, so long as it complies with the terms imposed by the municipality, and keeps within the limits already stated: Struthers v. Dunkirk & Warren Railroad Company, 87 Pa. 282; Snyder v. The Pennsylvania Railroad Company, 55 Pa. 340; The Railroad Company v. Speer, 56 Pa. 325. If it exceeds these limits and imposes a new servitude on the land occupied by the public easement the owner is entitled to compensation, and under some circumstances may recover the land itself. In Phillips v. The Dunkirk & Warren Railroad Company, 78 Pa. 177, the track of the railroad had been located upon a public road and occupied it longitudinally for some considerable distance.

The easement of the public for purposes of travel was thus rendered useless and the way abandoned in consequence. A new road was built by the railroad company to take its place which was accepted and used by the public and the occupancy of the highway was thus settled for so far as the public was concerned. After this was done, the owner of a farm, lying along one side of the road, so abandoned to the railroad com-

pany, brought an action of ejectment against the company to recover a strip of land representing one half of the land covered by the highway as it was opened and· traveled before the railroad took possession of it.   He was allowed to recover. He owned to the centre of the road, subject to the public easement.   The railroad company entered under the protection of that easement, but, once in possession, its use soon became inconsistent with and destructive of the easement so that the public was compelled to abandon it.   The land was thus relieved from the burden imposed by the highway and the owner was at liberty to assert his title against any one found in possession.

But it is not necessary that the public easement should be destroyed to enable the owner to recover for an additional servitude imposed upon his land.   Among the more recent of the cases in which this doctrine has been recognized and applied are Duncan v. The Pennsylvania Railroad Company, 111 Pa. 354; The Railroad Company v. Walsh and others, 124 Pa. 544; Ziemer v. The Railroad Company, 124 Pa. 560.  In Walsh's case and in Duncan's case the ground of recovery was that the railroad, while wholly within a public street, was so located as to interfere with access to the plaintiff's buildings and practically cut them off from the highway.   In Zeimer's case the railroad was upon the street but it was so constructed as to obstruct the drainage from his premises.   In each case a new servitude had been imposed upon the land occupied by the street, which injuriously affected the adjacent owner by interfering with the access to or drainage from his property; and for the injury sustained by reason of such additional servitude he was allowed to recover damages.

In the case before us we have a new state of facts.   The defendant entered upon the intersection of Washington avenue and New street by virtue of the implied permission afforded by its charter, and the express permission of the city of Scranton.

But, as we have seen, the permission of the city may be conditioned upon the compliance by the railroad company with such terms as may be deemed necessary to protect the public in its use of the streets. / A crossing at grade has come to be regarded as dangerous to the public.   Municipal governments now very generally refuse permission to make them where it is reasonably

practicable to make the crossing underground or overhead.  In this case the city of Scranton required, at least it authorized, the crossing by means of an overhead bridge.  The street over which it had control was upon the surface, but the easement for public travel affected the underlying strata by imposing upon them a servitude to the surface for the support of the way. It affected the open space overhead by imposing a servitude for the supply of air and light to the public while using the way. The owner of the surface upon which the way was opened could neither undermine nor overhang it without municipal consent, for the servitude imposed by the existence of the highway follows his title upward and downward from the surface so far as may be necessary for the safety and convenience of the public; and the owner is precluded from the exercise of acts of ownership in hostility to or inconsistent with the servitude so imposed.  The permission of the municipality to cross or enter upon one of its streets, whether upon the surface or above or below it, is an authority to the grantee to enter within the limits affected by the public easement and in subordination to it. The grantee may lawfully enter under this permission, but his rights are subject to the same limitations that have been already pointed out.  He must impose no new servitude upon the land. If he does he takes not only what the municipality had to grant but he takes from the owner in addition.  In such case, as we have seen by the cases already cited, the owner is entitled to compensation for the new servitude to which he is subjected.

The defendant has not disturbed the public easement of travel for it carries its railway and its trains twenty-three feet above the surface of the streets; and so far as its bridge overhangs the way the city has authorized it to be done.  The public have therefore no ground for complaint; but the question remains whether this overhead crossing imposes a new servitude on the surface which is injurious to the plaintiff's property. This crossing is in effect a new and distinct way.  It is suspended over that which the public occupy on the surface.  The public has no right in it, but one who goes upon it without the consent of the defendant is a trespasser.  It is built for the exclusive use of the defendant corporation in the movement of its trains, by means of locomotive engines.  It invades space which belongs to the plaintiff subject to the servitude which the

existence of the way upon the surface imposes. If the streets should be abandoned by the public or vacated by a decree of the court of quarter sessions, this structure would remain unaffected thereby. The extinguishment of the public easement would remit the plaintiff to all his rights as an owner, but he could not exercise them. If he should attempt to build upon his land, the bridge would intercept his operations. These facts are not denied and their legal value may be determined by the courts. They show the imposition of a new servitude upon the surface for the exclusive benefit of the defendant. The plaintiff's property is in the built-up part of a growing city. The possibility of the vacation of these streets may be so remote as not to be worth considering; but the extent to which the new servitude really injures the property is a question for the consideration of the jury.

This brings us to the question of the measure of damages. The plaintiff's declaration as filed contained two counts. One of these charged a trespass quare clausum fregit. The other proceeded upon the theory that consequential damages were alone recoverable, and claimed that these were the result of the construction of the abutments, of the construction of the bridge, and of the operation of the defendant's railroad upon and over the bridge. The first count was abandoned at the trial, and the plaintiff rested his right to recover on the second. He claimed that the erection of the abutments and of the bridge excluded light and air from his premises; that the operation of the railroad made great noise, confusion, dust and smoke, and exposed his premises to danger from fire, thereby affecting the comfort and security of the double dwelling-house; and that the construction and operation of the railroad over the elevated crossing obstructed the streets and made the approach to his premises difficult and dangerous. All the questions thus raised were allowed to go to the jury and the verdict affords reason to think that they were all considered in making up its amount. But the abutments were not in the highway. They were built on the land of the defendant and were lawful structures. The plaintiff may have preferred that dwellings should have been erected on these lots, and his own property may have been rendered less desirable and less valuable because of the use the defendant made of them; but the plaintiff

had no cause of action on that account. So far therefore as the depreciation in the value of his property is due to the absence of dwellings on these lots and to the presence of the solid stone abutments that face the double dwelling on both fronts, the jury should have been told to disregard it.

The alleged obstruction to access to the plaintiff's premises was not supported in the least degree by the evidence. There was in fact no pretence that any obstruction existed in the streets or on the surface; but it was alleged on the trial that horses might take fright at the passage of trains over the bridge twenty-three feet above the surface, and that persons who would otherwise come to the plaintiff's double dwelling with wagons or carriages might be deterred from coming by fear that their horses would be frightened by trains on the overhead crossing and become unmanageable. This is not an obstruction to access. It is too well settled to need a citation of authorities that mere exposure to noise, smoke, dust, and the danger of horses becoming frightened by a moving train is not an actionable injury. Such an exposure is an inconvenience, and sometimes a source of danger, to all persons who live near a railroad, or who have occasion to travel along a street that is crossed by one. Such an inconvenience or danger is common to many persons but special to none. It may be greater to those who live or do business near the line of the road, but it affects all who have occasion to come near it, or pass along it, or over or under it. It is the same in kind, though greater in degree, as the inconvenience arising from the noise, confusion and dust incident to travel upon a paved street or a common highway. It is the necessary result of the lawful operation of a railroad and part of the price paid by society for the inceased speed and convenience in the transportation of persons and property which it affords. This subject should have been withdrawn from the jury. There was no actionable interference with access to plaintiff's property.

It is urged that the new constitution requires a different holding and that Duncan v. The Railroad and the cases following it have so determined. We do not think so. The constitution makes the person or corporation exercising the right of eminent domain liable to make " just compensation for property taken, injured or destroyed by the construction or en-

largement of their works." Property is "taken" by an entry
upon and an appropriation of it as in the ordinary case of loca-
tion. It is "injured" by obstructing access, as in Duncan's
case, or drainage as in Zeimer's case. It is destroyed, although
not touched directly, when the result of construction is to pre-
vent its use, as in Koons v. The Monongahela Navigation
Company. The injury results in these cases from the con-
struction of the works of the corporation. But in the case of
a valuable country hotel, the business of which was destroyed,
by the change of travel from wagons to trains as the result of
the operation of a railroad, the plaintiff was held to be remedi-
less although the value of his property was destroyed. In
many instances business has been diverted from towns and vil-
lages and the value of property therein seriously impaired as a
result of the operation of a railroad through or near them, but
the owners of such property have no cause of action against
the railroad company on that account.

The expression of the Chief Justice in Walsh's case on which
so much reliance seems to be put was intended to express, and
we think does clearly express, a very different thought. The
injury complained of in that case was an obstruction in the way
of access to the building. The building was upon a street
corner. The tracks of the railroad were laid close to the curb-
stone on one of the streets on which the building fronted, and
directly across the other. The defence was that the rails were
laid on the same grade with the pavement and that the pave-
ment had been relaid with belgian blocks between the rails
and on each side of the track, so that the railroad presented no
obstruction to the use of the street for carriages. We said in
reply that the word construction included not only the move-
ment of earth, and the laying down of rails upon a road-bed,
but the character and purpose of the structure. Two parallel
iron rails, in themselves considered, might present little or no
obstacle in the way of access to the building; but the structure
was a railroad, built for the purpose of moving trains of cars
by means of locomotive engines; and whether it obstructed
access or not, depended, not merely on the position of the rails,
but also upon the use for which they were intended. Not to
take the use of the rails into consideration the Chief Justice
well said would be to take too narrow a view of the constitu-

tional provision.  The business authorized by the charter of a railroad corporation is the carriage of persons and goods.  The work of construction is provided for as an indispensable preliminary.  A road must be built before it can be operated. The manner and the purpose of construction are to be considered in determining questions relating to damages ; but in the operation of its road a company is liable only for negligence or malice.  Smoke, dust and noise are the usual, and, in the present state of knowledge on the subject, the necessary consequences of the use of steam and the movement of trains, just as noise and dust are the consequences of the movement of drays and carts over an ordinary highway.  The resulting inconvenience and discomfort are in both cases *damnum absque injuria* : Lippincott v. The Pennsylvania Railroad, 116 Pa. 472 ; Marchant v. The Railroad Company, 119 Pa. 541.

We are thus brought to the conclusion that the plaintiff's cause of action rests on the new servitude imposed by the construction of the overhead crossing, and the damage he sustains in consequence.  The company had the right under its charter, and the municipal consent, to enter and cross the highway without liability to the plaintiff, provided it could do so without subjecting his property to any servitude which the public easement then existing did not impose.  But the elevated crossing overhanging so much of his land as is covered by the highway does, to some extent, impose an additional servitude upon his property.  While the streets remain on the surface, the use of the space above them by the defendant does not interfere with the plaintiff's use of his property that is subject to the public easement ; and the probability of the vacation of the streets in the built-up part of the city is so slight as scarcely to deserve consideration.  But if this elevated crossing does to any appreciable extent exclude light and air from the double dwelling, or affect the value of his property by reason of any additional servitude imposed upon it, for the injury so sustained the plaintiff may recover, because such injury is the result of the construction of the defendant's railroad.

Little need be said of the remaining assignments of error. Several of them are directed against the admission of witnesses to speak of the value of the plaintiff's property and its depreciation.  The appellant contends that expert testimony is

needed to determine the value of city property, but we have not so held.    The value of a house or a piece of ground is a subject upon which all persons familiar with the property who have formed an opinion are competent to speak.    The value of their opinions will depend on the extent of their familiarity with surrounding property and the prices asked and paid for it, but this is for the jury to determine :  The Canal and Railroad Co. v. Bunnell, 81 Pa. 414 ;  Curtin v. The Nittany Valley Railroad Co., 135 Pa. 20.    These assignments are not sustained.

The ninth assignment is to the action of the learned judge in submitting to the jury the question whether the overhead crossing presented an actual obstruction to access to the plaintiff's property.    There was no evidence of the existence of any such obstruction unless mere exposure to the danger of horses being frightened by passing trains twenty-three feet above the surface of the highway, was such an obstruction.    As it is well settled by the cases already cited that it is not, the question should not have been submitted.

Nor was the amount of the verdict to be fixed by a comparison of the value of the plaintiff's property before the defendant's railroad was built, and after.    The occupation of the corners fronting his own across Washington avenue and New street may have affected the value of his property quite seriously. So might the erection of a brewery or a livery stable or a factory, upon the same corners ;  but the plaintiff would have been without remedy.    So the mere proximity of a railroad, with its burden of traffic, may render dwelling-houses less desirable, and diminish their market value, without imposing any liability on the railroad company for the loss sustained by their owners.    The inquiry in this case should have been confined, as we have already seen, to the injury inflicted by means of the additional servitude imposed upon the plaintiff's property by the defendant corporation.    The building of abutments on its own land imposed no servitude on that of the plaintiff. The mere proximity of its road so that the noise of passing trains could be heard, or the dust and smoke therefrom be noticeable, imposed no servitude.    The only legal ground of complaint grows out of the overhanging of so much of the land to which the plaintiff has title as is occupied at the surface by the streets.    This is a new servitude which, standing apart

from all other considerations, except such as grow legitimately out of the character of the bridge and its effect upon the plaintiff's dwelling and lot, constitutes the ground for a recovery. The question is, what has the defendant added to the public easement? What new burden has it put upon the plaintiff's property by overhanging the intersection with its bridge? The answer furnishes the correct measure of the plaintiff's injury, and of his right to compensation.

The judgment of the court below is now reversed for the reasons given in the foregoing opinion, and a venire facias de novo awarded.