# PENN. SCHUYL. V. R. CO. v. M. A. WALSH ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF MONTGOMERY
COUNTY.

Argued February 6, 1889—Decided March 18, 1889.

1. Where a railroad is laid down upon a public street and, though at grade, is so constructed with reference to the property of an abutting owner, that by its operation in a lawful manner access to the property, if not actually cut off, is rendered dangerous, the company is liable for consequential injuries under § 8, article XVI of the constitution.*

2. It would be an unsavory technicality to hold that a railroad laid down by the curb in front of a man's door, with trains constantly passing and repassing, did not interfere with his access to his house, and was not an injury caused by the construction of the road: per Mr. Chief Justice PAXSON, distinguishing Penn. R. Co. v. Lippincott, 116 Pa. 472, and Penn. R. Co. v. Marchant, 119 Pa. 541.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 49 January Term 1889, Sup. Ct.; court below, No. 42 June Term 1886, C. P.

On April 3, 1886, Maurice A. Walsh, Nicholas Cantwell and James E. Mulholland, executors of the last will and testament of the Most Rev. James F. Wood, Archbishop of Philadelphia, to the use of the Most Rev. Patrick John Ryan, Archbishop of Philadelphia, successor to the Most Rev. James F. Wood, brought an action in case against the Pennsylvania Schuylkill Valley Railroad Company.

The declaration set forth the ownership of the plaintiffs of a lot of ground fronting 196 feet on Lafayette street at the corner of Cherry street, in the borough of Norristown, on which were erected a church edifice about 30 feet back from said street, in the rear basement of which was a parochial school-room, a parsonage about 40 feet back from said street, and three tenement houses on the line of said street; and charged that the defendant company had "construed its said

---

*See the case following this.

highway or railroad and placed and laid the rails thereof along the southwesterly side of said Lafayette street and across Cherry street close to and near the street curbstone in front of the said parsonage, church edifice and school, messuage and tenement of the said plaintiff, and has continuously and constantly run locomotives and cars for passengers and freight to and fro over and upon the said railroad tracks so placed and laid, whereby the said street or highway is obstructed, closed and destroyed and all access to the front of said messuage and tenement, parsonage, church edifice and school is prevented, cut off and taken away, and the same rendered difficult and dangerous of approach, and the said parsonage, church edifice and school rendered unfit and unsafe for use as a parsonage, church and school, and their value wholly and totally destroyed." Issue.

At the trial on December 26, 1887, there was a verdict rendered for the defendant. A new trial having been granted, the cause was called for trial a second time on June 12, 1888, when the plaintiff showed title beginning by a deed to Right Rev. John Newman, dated in 1859, bounding the property in front by said Lafayette street, followed by divers mesne conveyances placing the title in the Most Rev. James F. Wood, with a certified copy of the will of the Most Rev. James F. Wood, duly appointing his executors to convey the property to his successors. It was then shown that the defendant company had laid its roadway on Lafayette street on the side next the church property, the outer rail of the track being about four and one half feet from the curb line of the street; that convenient access to the church and school-room was interfered with, and the services in the church interrupted, by the noise of passing and repassing passenger and freight trains.

One witness for the plaintiffs, William H. Bodey, a lumber merchant, builder and architect, testified that the property was destroyed for church purposes, and put the depreciation of its market value at about $30,000. On cross-examination, he was asked what are the items of this depreciation?

"A. I think, taking the parsonage, that its rental value has decreased by laying the railroad directly opposite these buildings and by the inconvenience caused by it and by running the cars over it; I do not know that just laying the track down

would depreciate the property without running cars over it; I do not think that alone would affect it that much, if there were no cars running over it; I do not know as I can say how much the laying of the track would affect it, it would affect it some, it certainly makes some inconvenience; you can drive across these tracks and you can get into the grooves; when you come in front of the church you have to drive directly with them; Cherry street runs directly down past the parsonage and the church is a considerable distance above; I make up my estimate from the general inconvenience caused by the railroad in passing the church, the noise and the injury to travel, in getting to and from the church and the danger; I cannot separate them and tell how much is for the danger alone; I have given my opinion what the damages are; it is dangerous to travel, and when there are funerals there; I do not know that there is any more danger in crossing that street directly than there is in crossing other tracks in Norristown; right at the street, I do not think there is; the track is laid down there on Lafayette street and planked between the tracks and cobble stones laid in; you could drive lengthways, straddle of the rails, if you could keep out of the grooves; I think there is more danger there in crossing the railroad tracks than at other streets in Norristown, when they have church services there, because there are a great many more people there."

Ignatius F. Horstman, called for plaintiffs, testified:

"I preached there on one occasion; the first and only time was the last Sunday in May of this year. I had not been told anything about the running of the railroad, and I commenced to speak about ten minutes past 8, and after I had been speaking about five minutes, a train came along, and the bells ringing, and there was a rumbling of the cars. I have been preaching for 21 years, and it takes a good deal to disturb me, and so I was able to contend it. Some five minutes later another train came along and there was another ringing of the bell."

Objected to.

By the court: "I will allow you to show by this witness what the effect of running a train on this road is, as trains are ordinarily run, and not negligently. But we will not allow the witness to testify as to the extent and the number of trains

Charge of Court below.

that passed on any particular date. I will allow you to show by this witness, what the effect of an ordinary running of a train over this road is upon the church services, but not the extent to which it was used at any particular time.[2] "

"Q. Describe how the services were affected by the running of that train?

"A. I had to stop twice. One time, perhaps for nearly two minutes, and another time certainly for one minute, until the train passed by, because no one could hear a word that I was saying."

At the close of the testimony on both sides, the court, SWARTZ, P. J., charged the jury:

The railroad company had a lawful right to occupy this street, and they cannot be made to remove their tracks; all that can be required of the company is to pay for such injury as may be occasioned by the construction of the railroad upon the street, provided such injury is covered by, or is embraced in the constitutional provision which directs that municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for the property taken, injured or destroyed by the construction or enlargement of their works, highways, or improvements.

The ordinary and proper use of a railway cannot be regarded as an element of damages, unless the construction of that railway interferes with the property of the claimant. But any interference with the access to the property, by locating a railroad on a highway immediately in front of claimants' property, so as to obstruct the access of vehicles, will entitle the plaintiffs to recover the damages they may sustain in the market value of their property, not only from the construction of the road, but from the lawful operation of the road; and [by the construction we mean the building of the road to be used for ordinary railroad purposes.] [10] The plaintiffs in this case, before the construction of the railroad, enjoyed the right of free access to their property by means of the highway immediately in front of it. Has the construction of the defendant's works taken away this right of access, or has the way to the property been obstructed, abridged, or interfered with? If

it has, then you will allow them such damages as they have sustained by reason of the construction of the railroad and its lawful operation; and, by lawful operation we mean the running of trains and working of machinery with care and skill free from negligence; and the measure of damages will then be the loss, if any, in the market value of the property, occasioned by the construction and operation of the road.

Your first inquiry will therefore be, has any right belonging to this property been interfered with by the construction of the railroad?' If not, that is the end of your inquiries; if it has, then you will inquire what damages, if any, the plaintiffs have sustained, not only from the construction but also from the lawful operation of the road. [You will say whether the construction of this railroad to be used for railroad purposes on the highway immediately in front of the property, being about four and one half feet from the curb line, obstructs the access to the property or not.] [10] If a railroad company were to construct its road this side of Lafayette street, say fifty feet north of the roadbed of Lafayette street, it might be that the operation of the road causing noise, and smoke, and dust, would injure the plaintiffs' property by reason of the inconveniences and noises thus produced, and such injury might depreciate the value of the property in the market; but under the law there could be no recovery for such noise, smoke and dust, because the railroad company had not constructed its road on any property of the plaintiffs, nor taken away any right of the plaintiffs nor any access to the plaintiffs' property, nor any right that belonged to them. . . . . Now, bearing this in mind, that for such damages unless there is a taking there can be no recovery, apply your own view and the evidence in this case to the matter before you.

The reason that for such noises, dust and smoke, there is no recovery where there is nothing taken from the property is, that the injury is one that is common to everybody who lives, or owns property in the vicinity of a railway. It may be that the party living close by or conducting a particular kind of business may be more annoyed, and his property may be more injured in its valuation, than another man who is further removed; but the difference is only one in degree and not in kind. Here you have a railroad located on the street next to

the plaintiffs' property, and on the side of the street next to the plaintiffs' property; and your inquiry will be whether from the fact that this company constructed its railroad on the south side of the street to be used for railroad purposes, the access to the property is interfered with? Whether any rights were taken away from this property by the construction of the railroad? You have heard the witnesses on the part of the plaintiffs. So far as I remember, every one of them that was interrogated upon this point testified that the access to this property was interfered with, that it was not safe to drive across the railroad, or along the railroad, and that prudent men would not so use the south side of that street. You have also heard the witnesses on the part of the defendant; some of them at least, saying that the access to this property has not been interfered with at all; that the street is in such a condition that you can use the property with the same facilities, and for the same purposes that you could use it before; some of them, however, saying that in the use of the street you would have to be watchful for the passing of locomotives or railroad trains. You have also viewed this property, and this, after all, may throw more light upon the case than the evidence that you have heard; and from all that is in this case you will say whether that property has been interfered with by the location of this railroad on the south side of the street; whether any approach to it has been taken, whether any access to it has been interfered with or destroyed. If there has been an injury done there by the construction of the road on that side of the street, then you will go one step further, and you will inquire what is the depreciation in the market value of this property, not only by reason of the construction, but by reason of the construction and lawful operation of the road. If, however, you find that the construction of this railroad upon Lafayette street does not interfere with any right that belongs to this property, then your inquiry would stop, because you could not give damages for noise, dust and smoke as an independent matter. Suppose, then, you find that it is necessary for you to inquire into the market value of this property, affected not only by the construction but by the operation of the road; you will then ascertain what is the difference in the market value of this property immediately before the construction of the road, and

Charge of Court below.

immediately after the construction of the road, and if you find that it has been diminished in its market value, then you will say what that diminution is in dollars and cents, and you will add interest to that from the first day of January, 1884, and render your verdict for that amount.

\*    \*    \*    \*    \*    \*    \*    \*

The plaintiffs request me to instruct you as follows:

1. The deed for the church property, which describes it as "bounded on Lafayette street," vested in the owners the right of soil to the middle of the street. The public had the right of way over the same only; but did not own the soil.

Answer: Refused. It is true that such description in the deed is sufficient to vest in the owners the right of soil to the middle of the street, if the plaintiffs' grantors had such title to convey; but whether the grantors had or had not such title, was not shown in this case. It is also true that the public had the right of way over the street and no ownership in the soil.

2. The plaintiffs had the right to use this street in common with the public, and also as a means of access to their property. For any interference with this right of access they are entitled to damages.

Answer: This is true, provided such interference with the access to the property depreciated its market value.

3. In all cases where land is taken or where a street in front of property is appropriated by a railway company, the owners of such land or property are entitled to just compensation, which compensation must be as full as the injury.

Answer: This is true, provided such appropriation of the street interfered with the access to the property, or infringes any right of the owners.

4. The compensation in such cases must be for consequential as well as for direct damages, such as will make the owner whole.

Answer: This is true.

5. The mode of ascertaining the damages is to allow the owners the difference, if any, in the market value of the property immediately before the construction of the railroad and immediately after.

Answer: This is true, if such difference shows a depreciation in the market value. Of course if the property were

worth more in the market after the construction than before, the difference would not be the damage to be given to the plaintiffs ; but if the value is less than it was before, then that difference will be the damages to be assessed in the case.

6. The plaintiffs are entitled to such damages as shall be proved by reason of the construction of the railroad and of such future operations of such railroad as shall be likely.

Answer: This is true. If you find the plaintiffs have proven damages by reason of the construction of the road, you will not only assess damages for the construction, but for such future lawful operation of the road as is likely. And you will compute interest on that amount from the first day of January, 1884.

7. The jury have no right to take into consideration the probable effect of their verdict upon other suits for damages.

Answer: This is true.

8. If the jury find that this property is most valuable for church uses, and that those uses will be interfered with or destroyed, then they must allow such damages as are proven, though the title to the property be in Archbishop Ryan, and though he do not attend the services in the church.

Answer: This is true, if the construction of the railroad interferes with the use of that property.

9. The jury must find their verdict according to the weight of evidence. They must not disregard the weight of evidence, and decide independently thereof, upon their own view.

Answer: This is true. You will consider the evidence in connection with your view, and give such weight to the evidence as you find it is entitled to.

The defendant has requested me to instruct you as follows :

1. The defendant's railroad having been constructed and laid on Lafayette street, where it had and has the lawful right to construct and maintain the same, the plaintiffs are not entitled to recover for the land or street taken for such construction and maintenance.

Answer: This is true. If the plaintiffs recover it is not for land taken, but by reason of the appropriation of the street, and the interference with the access to the plaintiffs' property by such appropriation.[3]

2. The defendant having the lawful right to occupy Lafay-

ette street with its railroad, the plaintiffs have no legal right to object to the same thereon, nor by reason of such occupancy entitled to a verdict.

Answer: Refused. The first part of this proposition is true; but we cannot affirm the last part. It is true that the mere fact that the street is occupied by the railroad is not sufficient in itself to entitle the plaintiffs to recover; but you may find that by reason of such occupancy the plaintiffs are entitled to damages.[4]

3. There can be no compensation for injury to person or property unaccompanied with negligence arising from the operation or use of the defendant's railroad, constructed on a public street in the borough of Norristown and so authorized by law, when no land is taken from the plaintiffs, nor the grade of the street changed by excavations or embankments by the defendant in front of the plaintiffs' premises, as distinguished from its construction, and if the jury does not find negligence on the part of the defendant causing such injury, the plaintiffs are not entitled to a verdict.

Answer: Refused. It is true that the ordinary and proper use of a railroad cannot be regarded as an element of damage unless the construction of the railroad interferes with the property of the plaintiffs; but we cannot say that if the jury find that this railway is not negligently operated, they must find a verdict against the plaintiffs.[5]

4. If the jury find that by reason of the operation of the defendant's railroad the plaintiffs are personally inconvenienced thereby, such inconvenience is not such a legal injury to the plaintiffs' property as entitles them to compensation, and for which they are not entitled to a verdict.

Answer: This is true. There can be no recovery for damages for personal inconvenience; but if the access to the plaintiffs' property is injured by the construction of the defendant's railroad, then the inconvenience occasioned by such interference with the access may be considered by the jury in determining how the market value of the property is affected by the construction and operation of the railroad.[6]

5. If the jury find that persons going to and from the plaintiffs' property, not being tenants or having a right of property therein, are inconvenienced by said railroad, the

plaintiffs are not entitled to compensation for such persons, as depreciating the value of the property, and the jury have no legal right to consider the same, and for which the plaintiffs are not entitled to a verdict.

Answer: This is true. The plaintiffs cannot recover damages for personal inconvenience to others. But if the access to plaintiffs' property is injured by the construction of the defendant's railroad, then the inconvenience arising from such interference of access must be considered by the jury in determining how the value of the property is affected by the construction and operation of the railroad.[7]

6. Disadvantages arising from the inconvenience of the plaintiffs and persons crossing the railroad in front of the plaintiffs' property, constructed in the public street, cannot be taken into consideration by the jury as a substantive claim for damages; nor can speculative, imaginary or contingent damages, in determining what injury, if any, the plaintiffs' property has suffered, or its value changed; and without such consideration by the jury for these items the verdict must be for the defendant.

Answer: Refused. It is true the inconvenience mentioned in this statement cannot be taken into consideration as a substantive claim for damages, nor can speculative, imaginary and contingent damages be allowed; but it does not follow from this that the verdict must be for the defendant, for the jury may find that the plaintiffs sustain damages other than those just enumerated.[8]

7. The testimony in this case being that the plaintiffs' premises are occupied and used for the same purposes since the construction of the defendant's railroad as they were before said construction, and no diminution of custom, rents, income, affecting the value of the property having been shown, the annoyance or inconvenience, if any, suffered by the plaintiffs and those who see proper to attend the services therein conducted, is of the same kind if not in degree, suffered by all other persons in the community who desire to attend, and for this the plaintiffs are not entitled to recover as an injury to their property.

Answer: This is true if the jury find the facts as stated in the point. If the plaintiffs did not suffer except the personal

inconveniences such as were common to all who attend the church, they cannot recover.

8. The measure of damages in this case is the legal injury, if any, proved to have been suffered by the plaintiffs in their property by the construction of the railroad by the defendant.

Answer: This is true; except that if the plaintiffs' property was injured by the construction of the railroad, then they can recover damages they have sustained arising from the construction and lawful operation of the railroad.

9. If the jury find that no private access or right of way from Lafayette street to the plaintiffs' premises has been destroyed or injured or cut off by the construction of the defendant's railroad, the verdict should be for the defendant.

Answer: This is true, unless by private access or right of way is meant an existing or established way across the street into the plaintiffs' property. If the access to plaintiffs' property was not interfered with there can be no recovery. The access to the property from Lafayette street may be destroyed or interfered with, and yet no designated, private access or right of way may have existed across the street into the plaintiffs' property.

10. It being the uncontradicted testimony, that the defendant's road is lawfully constructed on Lafayette street, the plaintiffs have no greater right to its use than the defendant company or the general public; and the plaintiffs' inconvenience, if any, being of the same kind, they are not entitled to recover for this.

Answer: This is true; that is, the defendant's road is lawfully constructed on Lafayette street. The plaintiffs may have no greater right to the use of the street than the defendant or the general public, and they cannot recover for such inconveniences that they may suffer in common with the general public, but it does not follow from this that the plaintiffs are not entitled to recover in this case. If the jury find that the access to plaintiffs' property was injured or destroyed by the construction of the defendant's railroad on Lafayette street, they must compensate them for any diminution in the market value occasioned by the construction and lawful operation of the railroad.[9]

11. Under all the testimony in this case the defendant is entitled to a verdict.

Answer: This is refused.[14]

The jury rendered a verdict in favor of plaintiffs for $24,082.50. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant company took this writ assigning as error, inter alia:

2. The admission of plaintiffs' offer.[2]

3–9. The answers to the defendant's points.[3 to 9]

10. The parts of the charge embraced in [ ] [10]

11. The answer to the defendant's point.[11]

*Mr. C. H. Stinson* and *Mr. Wayne MacVeagh*, for the plaintiff in error:

I. Is the defendant company liable in damages to the plaintiffs, under the circumstances of this case, for the construction of their road on Lafayette street?

1. That the railroad was lawfully constructed on said street is assumed. There was no land taken or property destroyed, for the same is used to-day, and in the same condition as it was prior to the construction of the road. Has the fact of the simple construction of the road, the simply placing two rails, a single track, on the street, laid with the grade of the street, injured the plaintiffs' property within the purview of § 8, article XVI. of the constitution? It may fairly be presumed that the word " construction " in this provision, has the same meaning now that it had before the provision was adopted, and is to be confined to the actual making of the road, excluding everything else: O'Connor v. Pittsburgh, 18 Pa. 187; New Castle etc. R. Co. v. McChesney, 85 Pa. 522.

2. The court erred, therefore, in charging that, " by construction we mean the building of the road to be used for ordinary railroad purposes. . . . And you will say whether the construction of the railroad to be used for railroad purposes in a highway immediately in front of the property, obstructed access to the property or not." This presented to the minds of the jury not only the construction but the use after construction, and allowed them to consider whether the running of trains interfered with the plaintiffs' property. It misled the jury by allowing their imaginations to take in matters not germane to their proper inquiry; and an examination of the

testimony shows that this error runs all through the trial, all
the estimates of the damages given embracing the use of the
road after it had been constructed. In fact, the narr in the
case virtually admits that the construction worked no injury.

II. Is the defendant company liable in damages to the
plaintiffs in this case, for the operation of their road without
negligence?

1. "Except on proof of negligence, the lawful use by a rail-
road company of a lawful erection entirely upon its own prop-
erty, is not the subject of damages, even under § 8, article XVI.
of the constitution:" Penn. R. Co. v. Lippincott, 116 Pa. 472.
It would seem but a corollary to this decision, that the lawful
use by a railroad of a lawful erection or construction on any
property other than the plaintiffs', is not the subject of
damages for the use or operation of the railroad without neg-
ligence. No common law action could have been sustained
for the operation or use of the railroad under the act of 1849:
New Castle etc. R. Co. v. McChesney, 85 Pa. 522; and the
constitution imposes upon corporations the same responsibility
for every legal wrong, for which a natural person would be
liable at common law, but none other: Edmundson v. Rail-
road Co., 111 Pa. 316.

2. Apply this rule to the case in hand, the operation of this
road in the street, in which the defendant company are entitled
to the same rights and privileges as any other citizen having
occasion to use it. The street belongs to the commonwealth.
The plaintiffs took their property subject to such uses as the
commonwealth saw proper to apply the street. You may sub-
ject the property owner to inconveniences and dangers incident
to a lawful use of the street, and no action at common law
will lie: Patten v. Railway Co., 33 Pa. 426. When an in-
dividual and a corporation stand equal, will a different measure
of liability be meted out to them?

*Mr. John G. Johnson* and *Mr. Chas. Hunsicker*, for the de-
fendants in error:

1. The argument of the defendant company when sifted is,
that under the act of 1849 it is liable for nothing, and that
under the constitution of the state it is liable only for the con-
struction of the road, and not for the injury which will natu-

rally arise from its operation; that, though the "simply placing two rails, a single track, on the street" was for the purpose of operating a railroad, no damage is recoverable for the depreciation of value which will naturally result from their use. Should such a construction of the constitution prevail, there would indeed be a keeping of the promise to the ear and a breaking of it to the hope.

2. Penn. R. Co. v. Lippincott, 116 Pa. 472, is expressly put on the ground that the railroad company erected their road on their own land, thus excepting such an erection from the principle decided in Pusey v. Allegheny, 98 Pa. 522; Pittsb. Junction R. Co. v. McCutcheon, 18 W. N. 527; Penn. R. Co.'s App., 115 Pa. 514, and Penn. R. Co. v. Duncan, 111 Pa. 352. "In a common law action, plaintiff can recover, under article XVI., § 8, of the constitution, for injury to his property including noise, smoke, dirt, etc., which at common law are common annoyances for which an action would not lie on behalf of an individual. . . . . Damages are recoverable for injuries resulting from the operation of the road after its completion, not merely for those incident to its construction:" Pittsb. June. R. Co. v. McCutcheon, 18 W. N. 527.


OPINION, MR. CHIEF JUSTICE PAXSON:

While there are numerous assignments of error in this case, the fifth presents the only question which requires discussion. The defendant below asked the court to instruct the jury that "there can be no compensation for injury to persons or property unaccompanied with negligence, arising from the operation or use of the defendant's railroad, constructed on a public street in the borough of Norristown, and so authorized by law, when no land is taken from the plaintiffs, nor the grade of the street changed by excavation or embankments by the defendant in front of the plaintiff's premises, as distinguished from its construction, and if the jury does not find negligence on the part of the defendant causing such injury, the plaintiffs are not entitled to a verdict;" which point the court below answered as follows: "Refused; it is true that the ordinary and proper use of a railroad cannot be regarded as an element of damage, unless the construction of the railroad interferes with the property of the plaintiffs; but we cannot say that if the jury find that

this railroad is not negligently operated, they must find a verdict against the plaintiffs."

The plaintiffs below are the owners of a certain property situated in the borough of Norristown, having a front of about 196 feet on Lafayette street. Upon this property there is a church building about thirty feet back from said street, in the rear basement of which is a school-room; a parsonage about 40 feet back from said street, and three tenement houses on the line of said street. The defendant company has constructed its railroad upon Lafayette street, and has laid its tracks close to the curbstone in front of said church, parsonage, and tenement houses, and has since continuously and constantly run locomotives and trains of passenger and freight cars over said tracks. This action was brought in the court below for damages arising from the erection and construction of the defendant's road; the allegation being that said street or highway is "obstructed, closed, and destroyed, and all access to the front of said messuage and tenement, parsonage, church edifice, and school is prevented, cut off, and taken away, and the same rendered difficult and dangerous of approach, and the said parsonage, church edifice, and school rendered unfit and unsafe for use as a parsonage, church and school, and their value wholly and totally destroyed."

We have recently discussed so fully the question of consequential injuries resulting from the erection and construction of railroads that a further elaboration of the subject is deemed unnecessary. Our latest case is Penna. Railroad Company v. Marchant, 119 Pa. 541, in which it was held that the word "injury" or (injured) as used in § 8, article XVI. of the constitution, means such a legal wrong as would be the subject of an action for damages at common law; that for such injuries both corporations and individuals now stand upon the same plane of responsibility. In that case, as in the prior case of Railroad Company v. Lippincott, 116 Pa. 472, there was no injury to the property by reason of the erection and construction of the road, and we held that the constitutional provision was not intended to apply to injuries which were the result merely of the operation of the road, as distinguished from its construction, and that in such case there could be no recovery for the annoyance of smoke, noise, and cinders, etc., caused by the running of the company's trains, unaccompanied with negli-

gence; in other words, that the injuries resulting from the exercise of a lawful business, in a lawful manner, without negligence and without malice, are damnum absque injuria. We cannot, however, apply that rule to this case for obvious reasons.

In Railroad Company v. Lippincott, and Railroad Company v. Marchant, supra, as in this case, there was no actual taking of any portion of the plaintiffs' property. But there the analogy ceases. In the cases cited there was no injury by reason of the construction of the road; here there was an injury and a serious one, the direct result of the construction. The track was laid close to the curbstone on the side of the street next to the plaintiffs' property, by means of which the access thereto if not actually cut off, was rendered dangerous. In this respect the case is upon all fours with the Railroad Company v. Duncan, 111 Pa. 352, and County of Chester v. Brower, 117 Pa. 647.

It was urged, however, that the mere laying down of the tracks in front of the plaintiffs' property was not of itself any injury; that it was a benefit in view of the fact that the street had been greatly improved by having been repaved with Belgian blocks in a superior manner, and that the injury was solely the result of the use and operation of the road. This is plausible but unsound. Where the question is the obstruction of access to a property by the building of a railroad, it is impossible to separate the construction from the operation of the road. Such a doctrine would be a misapplication of the rule laid down in Railroad Company v. Marchant, supra. It would be an unsavory technicality to hold that a railroad laid down by the curb in front of a man's door, with trains constantly passing and repassing, did not interfere with his access to his house, and was not an injury caused by the construction of the road. No authority for such a proposition can be found in anything this court has ever said. We are of opinion that in the case in hand there was an injury arising from the erection and construction. This being so, it stands upon the same footing as to consequential injuries as if it had been an actual taking of a portion of the plaintiffs' property.

Judgment affirmed.