## Willock to use *v.* Beaver Valley Railroad Company, Appellant.

*Streets—Title—Plan of lots—Land owned by commonwealth.*

Where the commonwealth lays out a plan of lots of land owned by itself, and the lots are sold with streets as boundaries, the title to the fee to the center of the streets passes to the purchasers.

Where the commonwealth lays out a plan of lots on which one of the boundary streets is indicated as of the width of 200 feet, but before any of the lots are sold, and before the rights of the general public attached, the commonwealth makes a grant of adjoining land so as to include 100 feet of the width of the boundary street, and thereafter the street is always regarded by the borough and by abutting property owners as of the width of 100 feet and no more, and lots are sold accordingly, and this condition of things continues for over 100 years, it will be presumed that the commonwealth intended to cut down, and did, in fact, cut down the width of the street from 200 feet to 100 feet.

*Railroads—Occupation of street—Special injuries—Damages.*

The construction of a railroad upon a public street already dedicated

to public use as a highway, imposes an additional servitude upon the owner of the fee, but such owner is only entitled to recover damages from the railroad company if he has suffered some special injury by reason of the construction of the railroad, such as interference with access to his property, or the cutting off of light and air from it. He cannot recover damages for the mere inconveniences and discomforts which the general public living near a railroad is compelled to bear.

*Railroads—Damages—Constitution—Art. XVI, sec. 8.*

Section 8 of art. XVI of the constitution which provides for just compensation to the owner of property "taken, injured or destroyed" in the construction of a railroad only applies when the title to the property so taken or injured is in the abutting owner who complains. If no property be actually taken or injured there is no damage to be compensated. If an abutting owner of property on a public highway has no title to the fee in the street or highway upon which a railroad is constructed with municipal consent he cannot recover compensation in the nature of damages for property taken or injured for the reason that under such circumstances he does not suffer a legal injury in the constitutional sense.

Argued Oct. 14, 1908. Appeal, No. 221, Oct. T., 1908, by defendant, from judgment of C. P. Beaver Co., March T., 1907, No. 223, on verdict for plaintiff in case of John P. Willock to use of W. S. Willock v. Beaver Valley Railroad Company. Before Mitchell, C. J., Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Reversed.

Trespass to recover injuries to land. Before Prather, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

Defendant presented these points:

4. If the jury find from the evidence that the fee to the whole ground upon which the railroad is constructed in front of the plaintiff's property does not belong to plaintiff, but is the property of the abutting owners on the south or opposite side of the street, then there is no additional servitude imposed on plaintiff's land, and the verdict should be in favor of the defendant. *Answer:* This point is refused. We have instructed you that the plaintiff is entitled to access to his property, whether he owns further into the street than his curb line or not; and if that access to his property has been interfered with

by the construction and operation of the defendant's railroad, you have a right to consider that in making up your verdict. [4]

6. There can be no recovery by the plaintiff in this case from any damages from smoke, dust, noise, or other inconvenience caused by the lawful operation of the defendant's railway. *Answer:* This point is refused. If you find that the plaintiff has no fee in the street except to his curb line, you might, under the evidence, still find whether or not the access to his property has been interfered with, and has thereby affected the value of his property, and if so, you will determine how that affects the property, and the extent thereof. [9]

[We say to you, gentlemen of the jury, as matter of law, that it is immaterial when you have found, if you so find, that the access to this property has been interfered with, abridged, and that it is with increased difficulty that the plaintiff has access to his property—we say to you, when you have found that fact, that it is immaterial whether his property line is twenty feet, thirty feet or forty feet from the curb. The plaintiff has a right to access to the street, and it is a presumption of law that the street as located there, and marked by curbs, is on the ground on which it was originally laid out and designed. And whether it is or is not, the plaintiff is entitled to the road and street privileges, and if you find that access by him to his property has been damaged or interfered with by reason of the construction and operation of the defendant's railroad, you will consider, in passing on that branch of the case, that his right of property is to the curb.] [5]

[If the plaintiff owns a right in the soil to the middle of the street, then he has a right here to be compensated, taking into consideration the testimony here, for what noise, dust and inconvenience he experiences by reason of the construction and operation of the railroad; but if you do not find, under this testimony, that his rights go further than the curb line, you would have no right to consider the matter of noise, or dust, or smoke as affecting his property; but you would still inquire how much, if any, his property has been damaged in its general market value, as affected by the construction of this railroad,

applying that construction and operation to the access to his property; and by access we do not mean a line of travel, such as might be affected by a line of an alley; he has a right to have access at any point along his property for the purposes for which it is adapted; that may be by a vehicle, or it may be by a private walk or pathway; and it is no entrance at any particular point, if it is a pathway.]. [10]

Verdict and judgment for plaintiff for $3,797.50. Defendant appealed.

*Errors assigned* were certain rulings on evidence; (4, 5, 9, 10) above instructions, quoting them.

*George B. Gordon,* of *Gordon & Smith,* with him *John M. Buchanan & James L. Hogan,* for appellant.—The plaintiff not being the owner of the ground upon which the defendant's railroad is constructed, and the same having been built pursuant to grants from the state, the borough and the owners of the fee, the plaintiff is not entitled to recover: Paul v. Carver, 26 Pa. 223; Neely v. Philadelphia, 212 Pa. 551; Beck v. R. R. Co., 11 Pa. C. C. Rep. 363; Mayor, etc., of Allegheny v. R. R. Co., 26 Pa. 355; Johns v. Davidson, 16 Pa. 512; Dunham v. Williams, 37 N. Y. 251; Chicago v. Rumsey, 87 Ill. 348; New Castle & Franklin R. R. Co. v. McChesney, 85 Pa. 522; Philadelphia & Trenton R. R. Co., 6 Wharton, 25; Danville, etc., R. R. Co. v. Com., 73 Pa. 29; Jones v. R. R. Co., 151 Pa. 30; Penna. R. R. Co. v. Duncan, 111 Pa. 352; Penna. R. R. Co. v. Lippincott, 116 Pa. 472; Penna. R. R. Co. v. Marchant, 119 Pa. 541; North Penna. R. R. Co. v. Traction Co., 205 Pa. 579; Cobb v. Warren St. Ry. Co., 218 Pa. 366.

The court's instructions as to the measure of damage were incorrect, and his rulings on admissions of evidence on the part of the plaintiff relating thereto: Jones v. R. R. Co., 151 Pa. 30.

*Robert W. Darragh,* with him *J. Rankin Martin,* for appellee.—The common grantor of both the street and lot in question, having at one time owned all the land in fee, the legal effect of plaintiff's deed, being bounded on the south by the

street in question, was to vest in him the fee in the land to the center of the street, subject, however, only to the rights of the public to use it for street purposes: Robinson v. Myers, 67 Pa. 9; Transue v. Sell, 105 Pa. 604.

The evidence clearly shows that the borough of Beaver never in any way recognized this street as being of any other that 100 feet in width, and the fact that it has been used as a street to the width of 100 feet for over 100 years, is better evidence of the location of the street than any mere paper location: Commonwealth v. Marshall, 137 Pa. 170; Hancock v. Borough of Wyoming, 148 Pa. 635; Penna. Schuylkill Val. R. R. Co. v. Walsh, 124 Pa. 544.

In determining a question of damage to a property so located, it is proper to submit to the jury evidence as to what extent the plaintiff's property may be damaged by reason thereof, which submission was properly and carefully given to the jury in this case: Penna. S. V. R. R. Co. v. Ziemer, 124 Pa. 560; Penna. R. R. Co. v. Duncan, 129 Pa. 181; Pittsburg Junction R. R. Co. v. McCutcheon, 18 W. N. C. 527; Shano v. Bridge Co., 189 Pa. 245.

OPINION BY MR. JUSTICE ELKIN, January 4, 1909:

There can be no proper disposition of this case without a determination of the question of title to the fee in Fifth street. If appellee, an abutting property owner, has no title to the fee in the street upon which the railroad is constructed, he cannot recover compensation in the nature of damages for property taken, injured or destroyed, because under such circumstances he would not suffer a legal injury. The first contention of learned counsel for appellant is that the town of Beaver was laid out under legislative authority on lands belonging to the state, and the streets and alleys having thus been dedicated to public use, the subsequent conveyance of lots to private owners did not divest the title of the commonwealth to the streets and alleys. This position is predicated on the theory that the commonwealth holds the streets as trustee for the public, and is not governed by the same rule as an individual grantor. A grant by the commonwealth is taken most strongly

against the grantee, while a grant by an individual is taken most strongly against the grantor. This is the general rule, but in our view of the present case it has no application. The town of Beaver was not laid out by the exercise of the sovereign power of the state, but by express legislative authority, directing the proper officers of the commonwealth, the owner of the soil, to lay out the same for the purpose of sale to private purchasers. The purpose was to encourage the building of a town at that point. The officers of the commonwealth had no power to act in the premises except such as was conferred by the legislature, and this power when conferred authorized the laying out of a town and provided for the sale of lots. If the plan of lots in the present case had been laid out by an individual in precisely the same manner as the commonwealth has done, and lots had been sold with streets as boundaries, the title of the fee to the center of the streets would have passed to the purchasers. This is the rule of our cases from Paul v. Carver, 26 Pa. 223, to Neely v. Phila., 212 Pa. 551. There is no sufficient reason why the same rule should not apply to the commonwealth under the facts of the case at bar. The reasonable construction to be placed upon the acts of assembly authorizing the laying out of the town and the sale of lots in this case, and of the acts of the officers entrusted with the execution of these powers, is that the legislature intended the purchasers of lots to enjoy every privilege and be invested with every legal right passing to any purchaser of a lot abutting on a public street, and this would pass the title of the fee to the center of the street to the purchaser as in the case of a purchase from an individual grantor. It is further contended that appellee is not the owner of the fee in any part of Fifth street as at present located, even if the title to the whole street is not in the commonwealth. This raises an interesting question and one not free from difficulty. In order to understand it the facts must be briefly stated. The town of Beaver was laid out under the authority of an act of assembly passed in 1791. The site was a part of the depreciation tract north of the Ohio river, and the title was in the commonwealth. The surveyor general caused a survey to be made, and prepared a plan showing lots,

streets, alleys and public squares. The principal streets were marked of the width of 100 feet, with the exception of Buffalo street on one side and Fifth street on the other, which were laid out to be of the width of 200 feet. The survey was approved by act of 1793, and there can be no doubt that there was a dedication of the streets to public use of the designated widths. If Fifth street still remains of the width of 200 feet, there can be no recovery in this case, because the railroad is not located on that part of the street as originally dedicated to which the appellee could claim title. It clearly appears, however, from the evidence that Fifth street was never opened to the width originally plotted, but has always been used and regarded as of the width of 100 feet. In itself this would not defeat the original dedication because the rule is that the character of the highway and the right of the public at all times to use it as such cannot be lost by nonuser. This rule, however, must be understood to apply after the rights of the public in general or of individual property owners in particular, have attached. Even in the case of a private owner who lays out a plan of lots with plotted streets and alleys of certain widths, thus making a dedication for public use, there is no reason why he may not change or alter his plan of lots, streets, and alleys if he does so before the rights of the public or of individuals become vested. If a private owner may change or alter a plan of lots under these circumstances, why cannot the commonwealth do the same thing if done in a proper manner? The surveyor general who caused the plan of lots to be laid out had no greater authority than the legislature gave him, and the power which gave can take away so long as the rights of others are not disturbed. This is what was done in the present case. Fifth street separated the inlots from the outlots on the original plan. In 1803, before any of the inlots or of the outlots abutting on Fifth street had been sold to anyone, and before the street had been opened or used as a public highway, the commonwealth, under the authority of an act of assembly, granted a patent of the outlots to the trustees of Beaver Academy, and in making the survey of this grant by courses and distances, included within its boundaries the north half of Fifth street as

originally dedicated.  There were no sales of either inlots or outlots to private owners for more than two years after the commonwealth had conveyed the outlots, including 100 feet, being the north half of Fifth street, to the Beaver Academy. In 1806 an act was passed authorizing the trustees of the academy to make sale of certain lots held by that institution under the prior grant.  As authorized by this act the outlots were sold, and the appellee derives his title from this source. It is clear, therefore, that from the date of the patent to Beaver Academy in 1803 down to the present owner, one-half of Fifth street as originally dedicated, has been included within the boundaries of the outlots now held by the appellee.  It further appears that the outlots belonging to appellee and which are the subject-matter of the present controversy have been described in the several deeds of conveyance forming the chain of title as bounded by Fifth street on the south, and Fifth street on the south which bound these lots has only been 100 feet wide from the beginning of these conveyances to the present time.  Fifth street has always been regarded by the borough and by abutting property owners as of the width of 100 feet and no more.  These facts clearly indicate an intention on the part of the commonwealth soon after the original dedication and before any adverse property rights had become vested, to reduce the width of Fifth street as originally dedicated and make it of the same width as the other principal streets of the borough.  We can see no good reason in law why this cannot be done.  The commonwealth herself, the proprietor of the soil, altered the width of the plotted street by making an absolute conveyance of the title to the north half of it to the trustees of Beaver Academy and in making the survey of the academy tract, located its southern boundary on the north line of Fifth street reduced to the width of 100 feet.  The conveyances since that time have given Fifth street thus reduced in width as the southern boundary of these lots. This has been the situation for more than a century, and we have not been convinced that there is any legal reason for disturbing it.  Under these circumstances, we must regard the width of Fifth street as 100 feet, and with the width of the

street thus fixed, it follows under the deeds of conveyance that appellee is the owner of the title to the center of it, and the railroad having been located in the center of the street, part of the construction is necessarily upon the fee of appellee.

Another question to be determined is what is the proper measure of damages, if any injury has been suffered, under the facts of this case. The appellant company has a charter from the commonwealth to construct a railroad and has obtained municipal consent to lay its tracks in the center of Fifth street. Prior to the adoption of the new constitution, abutting property owners, who sustained injuries resulting from the construction of a railroad upon a public street could not recover damages. It was uniformly held that such damages were damnum absque injuria. Section 8 of art. 16 of the constitution was intended to remedy what was considered a hardship under the old rule by providing that when private property is taken for public use just compensation shall be made for property so "taken, injured or destroyed." This section of the constitution has been the source of much contention and our earlier cases indicate a difference of view as to its proper interpretation, but the rule has been finally settled that there must be either an actual taking of or positive and visible injury to the property of an abutting owner on the street before there can be a recovery of damages. The construction of a railroad upon a public street already dedicated to public use as a highway imposes an additional servitude upon the owner of the fee, and one not contemplated when the street was originally laid out. In this sense the abutting owner has been injured within the meaning of the constitution and for any special injury suffered by the additional servitude imposed he is entitled to just compensation. The right of action accrues when the railroad is constructed. This is the doctrine of Penna. S. V. Railroad Co. v. Walsh, 124 Pa. 544; Penna. S. V. Railroad Co. v. Ziemer, 124 Pa. 560; Penna. Railroad Co. v. Duncan, 129 Pa. 181; Jones v. Railroad, 151 Pa. 30. It must not be overlooked, however, that the foundation of the right of action is the allegation that the abutting property owner has suffered some special injury by reason of the additional

servitude upon the street caused by the construction of the railroad thereon. In some instances access to his property was interfered with, in others drainage was disturbed, and in others light and air were cut off. The injury to the complaining property owner must be special, different from that of the general public, else there can be no recovery. This, for the reason that the only claim for damages is on account of some special injury to the private owner in the construction of the railroad, and he cannot recover for those inconveniences or discomforts which must be borne by the general public which live near a railroad. Title to the property either taken or injured must necessarily be in the abutting property owner who complains, because it is the taking of or injury to private property for which compensation is to be made. If no property be taken or injured, there is no damage to be compensated. In all such cases there can be no recovery unless special injuries are alleged and proven, and the proper measure of damages is the extent of those injuries to the abutting owner. It is true these special injuries may depreciate the value of the property, and we see no reason why inquiry should not be made as to the amount of depreciation in value caused by the special injuries about which complaint is made. In this connection, however, it should be observed that in Jones v. Railroad Company, 151 Pa. 30, it was finally settled that noise, smoke and dust as well as other inconveniences and discomforts which must be borne by the general public and which are occasioned by the operation of the railroad, cannot be considered in estimating damages for special injuries in this class of cases. In the statement of claim the appellee complains that access to his property has been interfered with by the construction of the railroad upon the street, and this is the special injury for which he asks to be compensated in damages. The proper inquiry, therefore, is, has the construction of the railroad interfered with access to his property, and if so, what amount of damage has resulted to the property owner by reason of the alleged interference?

The fifth, sixth, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth assignments of error are sustained.

Judgment reversed and a venire facias de novo awarded.