## Sprague et al. v. Nelson.

*Riparian rights—Bank of Lake Erie—Title to beach—Low water-mark.*

1. Low water-mark on the shore of Lake Erie is where the water usually stands when free from disturbing causes.

2. When a conveyance describes the land as extending to the shore of Lake Erie, it will be construed that the grantee takes title to low water-mark of the lake, unless otherwise limited in the grant.

*Highways—Title of abutting owner—Right of municipal authorities to take or sell soil.*

3. Unless otherwise expressly or by clear implication reserved, the title fee of one who owns land adjoining a public highway extends to the middle of the road. The public has but a right of way and the municipal authorities have no power to confer on a third person the right to take soil from the roadbed for his own use against the objection of abutting owners.

*Equity—Amendment of pleadings.*

4. Where the name of one of the plaintiffs was omitted, but the bill contained originally all of the averments necessary to make her a party plaintiff except the insertion of her name, the court undoubtedly has power to permit amendment by inserting her name as such plaintiff.

*Equity—Jurisdiction—Prevention of multiplicity of suits.*

5. Equity will attach to prevent a multiplicity of lawsuits, and when once it attaches it will permit all persons to come in and have their rights adjudicated so far as may be, provided no disadvantage accrues to either party by amendment.

Bill in equity. C. P. Erie Co., Feb. T., 1924, No. 9.

*Reed, Wait & Spofford,* for plaintiffs.

*Brooks, English & Quinn,* for defendant.

ROSSITER, P. J.—This case came on to be heard on bill, answer, replication and testimony, and the facts are found as follows:

### Findings of fact.

1. That the plaintiffs are Theodore Sprague, Jr., and Edith G. Sprague, his wife, and Mary N. Andrews, the latter being made a party plaintiff on her own motion, which was allowed.

2. That the plaintiffs, Theodore and Edith Sprague, are the owners of certain lands in North East Township, Erie County, Pennsylvania, bounded and described as follows, to wit: Beginning at high water-mark on the shore of Lake Erie; thence south along the line forming the westerly side of Freeport Road to the northeasterly corner of a lot owned by Mrs. July Allen; thence westerly along the line of the said Allen lot about 2.30 chains to the northwesterly corner of the Allen lot; thence north 3 degrees 30 minutes east to high water-mark on the bank of Lake Erie; thence along said shore at high water-mark to point or place of beginning. Containing ¾'s acre, be the same more or less, with the appurtenances.

3. That Mary N. Andrews is the owner of lands in the township, county and State aforesaid, bounded and described as follows, to wit: Bounded on the north by Lake Erie, on the east by the centre of what is known as the Sixteen Mile Creek, on the south by the highway and land formerly owned by H. Churchill, now Theodore Sprague, on the west by the highway leading from Lake Erie to North East Borough and known as Freeport Road. Containing about five acres, be the same more or less. Reserving therefrom ¼ acre of land lying about the centre of the above described piece on the west side and known as the George Covey lot, now owned by Henry Plubell and being the same land deeded by Sarah V. Hyser to Henry Kopoke, now

Sprague et al. v. Nelson.

deceased, and willed by said Henry Kopoke to Lizzie J. Wilks, or grantor herein named.

4. That there are no reservations in either of the deeds to the plaintiffs or any of their predecessors in title of the beach of the lake or the Freeport Road, or any portion of either of them.

5. That the said Theodore Sprague is lessee or manager of the lands owned by Mary N. Andrews.

6. That Freeport Road, a public road of the township, county and State aforesaid, extends in a southerly direction from Lake Erie and is the easterly boundary-line of the plaintiff Sprague's property and the westerly boundary-line of the plaintiff Andrews's property.

7. That the respondent, Alfred Nelson, is a citizen of the Borough of North East, sometimes engaged in the business of hauling sand, gravel, etc., and has from time to time for many years entered upon the said Freeport Road where it is bounded by the plaintiff's property and upon the shore of Lake Erie, contiguous to the northward of the plaintiff's property, and taken and hauled away therefrom quantities of gravel, sand, etc., against the protest of plaintiffs, which sand and gravel had a market value of about 50 cents per cubic yard.

8. That the taking of sand, gravel, etc., from the beach caused holes therein, which were sooner or later filled up by alluvia from the lake, and, while open, interfered to some extent with the use of the beach for recreation purposes.

9. That the respondent threatens to continue to haul sand, gravel, etc., from the said lake front against the protest of the plaintiffs.

### Legal conclusions.

1. The plaintiffs are the owners of the lands described in the bill and the same extend to low water-mark of Lake Erie.

2. The low water-mark of Lake Erie is "where the water usually stands when free from disturbing causes."

3. The plaintiffs Sprague, subject to the right of passage by the public, own to the centre of Freeport Road on the westerly side thereof, and the Andrews to the centre on the easterly side thereof, where their property is contiguous thereto.

4. That the defendant has no standing to contest the title or possession by plaintiffs, or either of them, to said land or road, he being an intruder and trespasser thereon. As against a stranger, wrongdoer or mere intruder, it is immaterial whether plaintiffs have a good title or possession of the land in question or not.

### Discussion.

The plaintiffs in their bill and by their proofs establish that they are the owners in fee of the two pieces of land in North East Township, fronting on Lake Erie, the Sprague piece to the west and the Andrews piece to the east of Freeport Road, a road extending from a southerly direction through both properties to Lake Erie. That the two pieces have a frontage on the lake of approximately 570 feet; that the beach of the lake is composed of lake sand and gravel, which has a commercial value, and that the beach, as a whole, has a value as an attraction for summer boarders, as well as the members of plaintiffs' households, in its use for recreation purposes, such as bathing, boating, etc.; that respondent has from time to time gone upon the beach with vehicles of conveyance and hauled away quantities of sand and gravel against the protest of the plaintiffs, and threatens to continue so to do. The respondent in his answer (which is in a nature of a confession and avoid-

ance) does not deny these facts, but avers (1) that the Sprague land begins on the north only at high water-mark and does not extend to the centre of the Freeport Road; (2) denies the exclusive right of plaintiffs to collect and sell gravel and sand, etc., from the beach, or that they are in lawful possession or control of or have any title whatsoever to the abutting shore or land between high and low water-mark; (3) that the acts complained of have not interfered with the use of the beach for recreation purposes; (4) that he has removed only three loads of sand and gravel from in front of plaintiffs Spragues' land in the past two years and that those were only of the value of 25 cents a load, and that all of the balance taken was from within the boundary-lines of the Freeport Road and taken by and with the consent of the township supervisors; (5) denies he has done or will do irreparable damage; (6) but avers that for twenty-eight years he has openly, notoriously and continuously removed large quantities of sand and gravel from in front of plaintiffs' land between high and low water-mark, without let, hindrance or interference by plaintiffs or their predecessors in title, until about two years ago, and avers that he has thus acquired a prescriptive right to remove sand and gravel from the premises.

The differences between the parties, then, are differences of fundamental legal rights rather than differences of disputed facts. That is, the plaintiffs contend they have a right to the use and control of the beach contiguous to their property as well as the Freeport Road abutting thereon, the latter subject to a right of way.

The respondent contends that plaintiffs have not now, and never have had, such right, but if they ever did have, they have lost it by acquiescence in its adverse use for such a length of time and under such circumstances as to establish a prescriptive right in him. The case then resolves itself into one simple question, viz., Who owns or controls the beach and the road—the owners of the land contiguous thereto, the public or purchasers by prescription? The question was not argued, has not been raised and is not important here, as we view it, whether or not the accretion to the beach, such as sand and gravel, are corporeal or incorporeal hereditaments (although it appears to be the former; see 197 Pa. 529, where it is spoken of as "land" and "soil"). If the former, then the defendant could acquire no rights therein unless by custom (of which there is no evidence), as a prescriptive right applies only to incorporeal hereditaments. It is undisputed that the Spragues and Andrews are in possession of this lake front and the land at the lake contiguous to and on both sides of the Freeport Road, and even though they are not the owners, an intruder has no standing whatever to contest their rights of possession: 40 Cyc., 559; that is, the law is that one who intends to intrude cannot oust another, even though that other is an intruder, so as to become the sole intruder himself: Pelton v. Strycker, 1 Erie Co. L. J. 24; 28 Dist. R. 177. If the law ousted one intruder in order to install another intruder, it would be kept busy ousting and installing unless the rightful owner appeared. "Two wrongs do not make a right."

The abstract of title down to and including the conveyance to plaintiffs fails to disclose that either expressly or by clear implication was there ever any reservation made to any of the lake front in dispute or any portion of the Freeport Road. "A reasonable construction of the description in (both) the deeds conveying the land in question to the shore of Lake Erie is that the grantees take the title to low water-mark of the lake, unless otherwise limited in the grant:" Pelton v. Strycker, 1 Erie C. L. J. 24; 28 D. R. 177, and citations there given. "Low water-mark is where the water usually stands when

free from disturbing causes:" 34 Ohio, 492. "Ever since the case of Carson *v.* Blazer, 2 Binney, 475, it has been held in many cases that a survey, returned as bounded by a large navigable river, vests in the owner the right of soil to ordinary low water-mark of the stream, subject to the public right of passage for navigation, fishing, etc., in the stream between ordinary high and ordinary low water-mark. Variety in the language of the return matters little, so that the intention to make the stream a boundary appears sufficient in the description and diagram. In determining this, both are taken together. The variety of expression in the decided cases is very great. The result of the cases is that when a return of a survey calls for a stream for its boundary, or to run by, along, up or down it, the title will run to the stream, and the marking of trees on the bank or margin of the stream to identify the lines run to the river, as well as the return of courses and distances measured along the margin necessarily to ascertain the quantity of land in the survey, will not restrain the title to the bank or margin only. As was said in Klingensmith *v.* Ground, 5 Watts, 458, a corner tree is not always to be had where it is wanted, and then the next most convenient must be taken; or, as in Ball *v.* Starks, a surveyor cannot run a curved line with compass:" Freeland *v.* Pennsylvania R. R. Co., 197 Pa. 529. And while the description is different in these deeds, viz., in the Sprague, "to high water-mark on the bank of Lake Erie," and in the Andrews's deed, "on the north by Lake Erie," the legal principle applies to both as reservation in the grant, or at least somewhere in the line of title is a requisite to deprive an abutting property owner of his riparian rights, and such a reservation appears in neither here. Riparian owners have the right to move and sell sand deposited as alluvia between low and high water-mark, and to use the land between low and high water-mark for their private purposes: Freeland *v.* Pennsylvania R. R. Co., 197 Pa. 529; and the rights of the riparian owner between high and low water-mark differ essentially from those of an owner of the soil over which a public highway passes. There is no highway for travel on foot, by horse or carriage, along the shore of a navigable stream, by force merely of the public right of navigation. A stream at high or low water stage is a highway for boats or other craft only: Zug *v.* Com., 70 Pa. 138. The owner of land adjoining a navigable river owns to low water-mark, subject to the public right of navigation to high water-mark: Lehigh Valley R. R. Co. *v.* Trone, 28 Pa. 206. This seems to dispose of the contention relative to the lake front. As to the Freeport Road, it is held that the rule laid down from Paul *v.* Carver, 24 Pa. 207, to Neely *v.* Philadelphia, 212 Pa. 551 (and, later, see 222 Pa. 590; 62 Pa. Superior Ct. 542), is, "unless otherwise expressly or by clear implication reserved, the title fee passes to the middle of the road. The public has but a right of way and the municipal authorities have no power to confer on the third person the right to take soil from the street for his use against the objection of abutting owners." This leaves but two queries, viz., as to the right of Mary N. Andrews to become a party plaintiff by amendment and as to the jurisdiction of the court.

As to the amendment allowing Mary N. Andrews to become a party plaintiff, it may be said that "equity delights to do justice and that not by halves;" that here the bill contained originally all the averments necessary to make Mrs. Andrews a party plaintiff, except the insertion of her name, and the court undoubtedly had power to permit the amendment under the Act of May 4, 1852, P. L. 574; see, also, Gotshall *v.* Langdon, 16 Pa. Superior Ct. 158, and McCracken's Estate, 13 Pa. Superior Ct. 201. An amendment of this sort should always be allowed, unless it works harm to the defendant.

Sprague et al. *v.* Nelson.

Here, no harm could accrue to the defendant by reason of the amendment, for the reason that the court offered to continue the case to such time as would permit him to reform his pleadings or prepare his case so as to meet any new conditions arising, resulting from the fact that Mary N. Andrews was permitted to become a party plaintiff.

As to the jurisdiction of the court, it is hornbook law that "equity suffers no wrong without a remedy;" "that equity will attach to prevent a multiplicity of lawsuits, and that once it attaches it will permit all persons to come in and have their rights adjudicated, so far as may be, provided no disadvantages accrues by amendment to either party." Here, it is admitted on the part of the respondent that he has trespassed upon the province of the complainants and threatens to do so; has taken at least 150 loads of sand and gravel, which were that many separate trespasses and might involve that many separate lawsuits; and this, coupled with the threat to continue the interference with the use, or at least the free enjoyment, of the beach for recreation purposes—clearly it is not necessary to make citations to support the proposition that here is a wrong that calls for a remedy or that equity will supply it.

There was proof offered as to the amount of sand and gravel hauled by the defendant away from the different beaches of the plaintiffs, but it was not segregated; that is, under the proof, it is impossible to tell how much should be awarded to one or how much to the other, except that the defendant admits that he took three loads of sand and gravel from the beach of the Spragues; but the attorney representing the plaintiffs announced in open court that plaintiffs were not contending for the purpose of the recovery of the money or damages or for past intrusions upon their property, but for the establishment of their present and future status in the premises, and that they waived any money recompense to that date. For this reason, we have not gone into the question of damages.

The prothonotary is, therefore, now, Aug. 5, 1924, directed to enter a decree *nisi* in compliance with the views above expressed, the same to become absolute unless exceptions filed *sec. reg.*          From Lytle F. Perry, Erie, Pa.