## Dante Club of Rankin, Appellant, *v.* Allegheny County.

Argued November 15, 1951. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

*Francis A. Muracca,* for appellant.

*John G. Brosky,* Assistant County Solicitor, with him *Nathaniel K. Beck,* County Solicitor, and *John W. Mamula,* Assistant County Solicitor, for appellee.

OPINION BY DITHRICH, J., January 17, 1952:

Claiming that the construction of the Rankin Bridge in Allegheny County resulted in consequential damages to its clubhouse in Rankin Borough, plaintiff presented a claim for damages before the Board of Viewers. The claim was disallowed on the ground that no damages were proven and on appeal to the Court of Common Pleas the verdict was for the defendant. Plaintiff moved for a new trial and from the refusal of its motion it has brought this appeal.

The new trial motion followed the stereotyped pattern that the verdict was against the law and the evidence and the charge of the court. Leave to file additional reasons was granted but none was filed.

The question of trial errors was not properly raised in the court below and, therefore, would not ordinarily be heard on appeal. But since the learned lower court sitting en banc treated them as though properly raised, we are disposing of them as though they were properly before this Court on appeal.

The chief burden of appellant's complaint is that
the trial judge erred in striking from the record the tes-
timony of one of its expert witnesses and in holding
that another of its expert witnesses was incompetent.
The first witness was West S. Brown. When counsel
for appellant was questioning him as to his qualifica-
tions, counsel for appellee interrupted to say that his
qualifications as a real estate expert were admitted.
He was later subjected to cross-examination as to his
competency to testify to the fair market value of ap-
pellant's property as affected by the improvement and
his competency was then objected to. The objection
was overruled and the witness was permitted to give
his estimate of the difference in value before and after
the improvement. After the witness had been cross-ex-
amined as to the "elements" which he considered in
arriving at his "after valuation", a motion was made
to strike his testimony. The court said, "We will grant
the motion and strike the testimony from the record
and tell the jury to disregard it." Later in the day the
witness was recalled for further examination in an
attempt to bolster his testimony by showing that an-
other element that had entered into his estimate of
the value of the property as affected by the construc-
tion of the bridge was the erection of a ramp approxi-
mately two feet from the front of the building and ex-
tending across the entire frontage of 24 feet. When
asked if he considered "that as a factor in [his]
estimate," he answered, "Yes, and very important too."
But he was not asked, nor did he say, how, in his opin-
ion, it affected the value of the building. No mention
of a ramp was made in his examination in chief. After
he had been recalled to the stand he said that "earlier
in [his] testimony" when he "spoke of a large viaduct"
he meant the ramp.

At the conclusion of his testimony counsel for ap-
pellant addressed the court and said, "am I to under-

stand Mr. Brown's testimony as to valuation is still stricken from the record? The Court: I am going to rule on that later." No further mention of it appears of record until the court in its charge told the jury that Brown's testimony "has [been] stricken from the record . . ., and Mr. Vunak was not permitted to testify, so you have simply the testimony of Mr. O'Connor." His testimony has not been printed as part of the record, but 'it was held to be competent and submitted to the jury, since the witness was of opinion that the construction of the ramp would interfere with the light and air of the building, the point counsel had tried to get across in his redirect examination of Brown, and had considered it as an element in arriving at his estimate of the value of the building immediately after the construction of the bridge and as affected thereby.

No special exception was taken to the charge of the court nor did counsel for appellant request any further instruction, although he was asked by the court if there was anything more he wanted her "to say to the jury." Before the motion was made to strike the witness Brown's testimony he was asked: "Am I correct . . . in stating that you have based your estimate of the after valuation on the fact that there have been other properties destroyed in this neighborhood, that there will be a viaduct constructed at this location, that this is used as a clubhouse, and that there has been a change in the neighborhood?" The answer was "Yes."

To entitle a property owner to compensation under §8 of article XVI of the Constitution, where there has been no taking of his property—admittedly none was taken here—he must prove special injury as the result of the imposition of an additional servitude. In the instant case it is admitted that the three piers constructed on Dale Street rest on that portion of the street to which plaintiff has a reversionary interest.

Where the owner is subjected to new and additional burdens, such as the construction of the ramp in this case, he is entitled to compensation for the injury actually sustained. *Jones v. Erie & Wyoming Valley R. R. Co.*, 151 Pa. 30, 25 A. 134.

What constitutes a new and additional burden is set forth in *Willock v. Beaver Valley R. R. Co.*, 222 Pa. 590, 72 A. 237. Practically the only difference in the two cases is that there the construction was of a railroad; here it is a bridge. The Court said (pp. 598, 599) : "The construction of a railroad upon a public street already dedicated to public use as a highway imposes an additional servitude upon the owner of the fee, and one not contemplated when the street was originally laid out. In this sense the abutting owner has been injured within the meaning of the constitution and for any *special* injury suffered by the additional servitude imposed he is entitled to just compensation. The right of action accrues when the railroad is constructed. This is the doctrine of Penna. S. V. Railroad Co. v. Walsh, 124 Pa. 544; Penna. S. V. Railroad Co. v. Ziemer, 124 Pa. 560; Penna. Railroad Co. v. Duncan, 129 Pa. 181; Jones v. Railroad, 151 Pa. 30. It must not be overlooked, however, that the foundation of the right of action is the allegation that the abutting property owner has suffered some *special* injury by reason of the additional servitude upon the street caused by the construction of the railroad thereon. In some instances access to his property was interfered with, in others drainage was disturbed, and in others *light and air were cut off*. The injury to the complaining property owner must be *special,* different from that of the general public, else there can be no recovery." (Emphasis added.) Cf. *Holmes and Holmes v. Public Service Commission (No. 2)*, 79 Pa. Superior Ct. 381.

A review of Brown's testimony reveals that his estimate of appellant's damages was not based on any

special injury to appellant's property different from that of the general neighborhood. That being the case, the better procedure would have been for the court to have declared him incompetent, as was done in respect of the witness Vunak, instead of permitting him to give his estimate as to values and then striking his testimony from the record.

"The question of the competency of a witness in cases of this character is a preliminary question and the trial court should see that the witness discloses his competency by a proper examination before he is permitted to testify generally": *Hope v. Philadelphia & Western R. R. Co.*, 211 Pa. 401, 405, 60 A. 996. However, the question of procedure is a matter largely within the discretion of the trial judge, and there has been no abuse of discretion here.

Judgment affirmed.