## Langford v. People's Light Company of Pittston, Appellant.

*Evidence—Witnesses—Expert witnesses—Value of land—Injuries to land by gas.*

1. In an action to recover for the loss of trees and grass, and damages to the soil of land, caused by the escape of gas from a gas company's pipe, where witnesses called by plaintiff establish their competency to express opinions as to land values, and no objection is made to their competency, the subject-matter of their testimony

bccomes a matter for the jury in the light of the facts to which they testify.

2. The market.value of land is not a question of science and skill upon which only experts can give an opinion. Persons in the neighborhood may be possessed of sufficient knowledge of the market value of the property, with the location and character of the land in question, and whether their opinion has any proper ground to rest upon, or is mere conjecture can be brought out on cross-examination.

Argued March 7, 1910.   Appeal, No. 22, March T., 1910, by defendant, from judgment of C. P. Luzerne Co., May T., 1906, No. 495, on verdict for plaintiff in case of Joseph Langford v. People's Light Company of Pittston. Before Rice, P. J., Henderson, Orlady, Head, Beaver and Porter, JJ.   Affirmed.

Trespass to recover damages for injuries to land.   Before Fuller, J.

The facts appear by the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,000.   Defendant appealed.

*Errors assigned* were (1, 2) rulings on the evidence of W. C. Southern, and Joseph Langford, plaintiff, sufficiently set forth in the opinion of the Superior Court.

*John T. Lenahan,* with him *Richard B. Sheridan,* for appellant, cited: Friday v. Penna. R. R. Co., 204 Pa. 405.

*H. J. Mahon,* with him *Evan C. Jones,* for appellee, cited: Ardesco Oil Co. v. Gilson, 63 Pa. 146; Penna., etc., Railroad Co. v. Bunnell, 81 Pa. 414; Schuylkill River, etc., R. R. Co. v. Stocker, 128 Pa. 233; Smith v. Penna. R. R. Co., 205 Pa. 645; Hope v. R. R. Co., 211 Pa. 401; Lally v. R. R. Co., 215 Pa. 436; Catlin v. Northern Coal & Iron Co., 225 Pa. 262.

Opinion by Orlady, J., July 20, 1910:

The plaintiff had been for some years before bringing this action the owner of a dwelling house and lot in the

borough of West Pittston, which was occupied by him and his family as a homestead. On the front part of the lot were located three elm trees which had been planted there for purposes of shade and decoration, and had grown to be of large size.

In May, 1903, the defendant company dug a trench in the street near the plaintiff's residence, about seven feet distant from the trees, in which it laid a main pipe for its gas service. About a month after the laying of the pipe, the leaves on the trees showed signs of blight or mildew, and it was soon thereafter discovered that the gas was escaping from a leak in the pipe, and this resulted in killing the grass and these elm trees. This action was brought to recover damages for this injury to his property, the plaintiff alleging that the defendant was negligent in the construction and maintenance of its gas pipes, and a verdict of $1,000 was rendered in favor of the plaintiff.

On the trial the questions of fact submitted were: 1. Were the trees killed by the gas escaping from the defendant's pipe? 2. Was the result due to the defendant's negligence or lack of proper care under the circumstances. 3. Was the market value of the property diminished, and if so, how much, by the loss of the trees.

This appeal is brought by the defendant, assigning for error the incompetency of two witnesses who were called by the plaintiff, and who testified to the value of the property as affected by the escaping gas. The witness Sutherland had lived in West Pittston for over forty years, and was familiar with the plaintiff's property, knew its condition before the loss of the trees and afterwards; knew of and testified as to sales of property in the next block, and in a general way knew of the prices at which real estate was held in the locality. There were no actual sales testified to in the block in which the plaintiff's property was situated, but from his knowledge of the property, its character and location, and the value at which similar properties were held, he testified that the market value of the property had been about $16,000 to $18,000, and

that after the trees were killed the value was reduced at least from $1,500 to $2,000, and that this idea was based upon the facts testified to by him and from the sales of property made shortly subsequent to the loss of these trees.

The testimony excepted to as represented by the second assignment, standing alone, was unquestionably incompetent.  At the conclusion of his examination, the defendant's counsel asked to have the testimony of the witness struck out "as to the depreciation of the value of the property," the question and answer being: "Q. The reason why you fix $2,500 and the only reason is because you would be willing to sell it for $2,500 less, is that it? A. That is it."  Preceding this, however, are twenty pages of examination and cross-examination, in which the general knowledge of the witness in regard to the location and character, the market value of this property and other properties in the neighborhood, with and without the trees, and the condition of the ground caused by the escaping gas, as well as the value of the trees, was thoroughly gone over, and as stated by the court in its opinion refusing a new trial: "The witness was found to be qualified as an expert and gave his testimony clearly and unequivocally, without any objection to his competency."  At most then his cross-examination on this point would affect the credibility and not the competency of his opinion. The jury was explicitly instructed to disregard any estimate of the value based upon sentiment or association, and the verdict being for only $1,000 demonstrates that the jury disregarded the witness's estimate of the damage done to the property.

There was no substantial contention on the part of the defendant that this injury to the plaintiff's property had not been caused by gas escaping from the main in the street, which had been either so negligently constructed or maintained as to permit the gas to escape therefrom and affect the ground along the whole front of the plaintiff's property, which had resulted in the destruction of the grass and trees.

It was urged in the argument that the injury to the property was not limited to the mere loss of the trees, but that the surface and subsoil of the lot were so impregnated and soaked by gas as to prevent any duplication of the trees and herbage in that soil. And in the examination of these witnesses, it is apparent from the record that their competency as such was not questioned. The excerpts from their testimony represent but a small part of their examination, which had been admitted without objection. The jury was very carefully instructed in regard to the proof adduced, the credibility of the witnesses, their interest and intelligence, and the measure of damages. There having been no objection made to the general competency of these two witnesses, the subject-matter of their testimony became a matter for the jury in the light of the facts to which they testified. The rights of the defendant were fully safeguarded by the instructions not to consider anything else than the fair market value of the property, before and after the injury, and to discriminate carefully between market value and sentimental value, and reject the latter.

As was said in Lally v. Central Valley R. R. Co., 215 Pa. 436: "The market value of land, even in cities, is not capable of exact proof, like that of stock or the staple commodities of trade, such as flour or sugar, or pig iron. At best it is a matter of opinion not strictly of experts, but of those who are shown to be familiar with the neighborhood, the situation and availability of the particular tract; the buying and selling value as shown by such sales or transactions as have occurred under circumstances to make them a fair basis for inference as to particular matter in issue. In neighborhoods where sales are few and at long intervals it would be unfair and impracticable to require as full and detailed knowledge on the part of witnesses as in other localities, where sales are frequent and of public interest and attention. Opinion of any kind is a poor quality of evidence, and where admissible at all is only so because it is the best that is available. In all

cases of competency on that subject there must be a sliding scale, the only standard of which is that the witness shall have such knowledge of the subject-matter as can be reasonably expected in view of the circumstances of the particular case." And in Catlin v. Northern Coal & Iron Co., 225 Pa. 262: "In such case, a witness must have such knowledge of the subject-matter as can reasonably be expected in view of the circumstances, the frequency or infrequency of sales, the location, adaptability of the land for any available purpose, and such other things as enter into a proper estimate of the market value."

The witness Sutherland testified to sufficient facts in regard to his knowledge of the property, and its value, as compared with his own purchase of land and other sales of land to entitle his testimony to some consideration by the jury. He was submitted to a rigorous cross-examination, and the effect to be given to his testimony was for the jury. So also in regard to the witness Langford, who was examined without objection as to his competency.

The market value of land is not a question of science and skill upon which only experts can give an opinion. Persons in the neighborhood may be possessed of sufficient knowledge of the market value of the property, with the location and character of the land in question, and whether their opinion has any proper ground to rest upon, or is mere conjecture can be brought out on cross-examination: Penna., etc., Railroad Company v. Bunnell, 81 Pa. 414; Smith v. Penna. R. R. Co., 205 Pa. 645; Hope v. Phila. & Western R. R. Co., 211 Pa. 401.

In Friday v. Penna. R. R. Co., 204 Pa. 405, upon which the appellant relies, Mr. Justice POTTER said: "The question of the competency of the witness, is always for the court, but in deciding it should have the benefit of every reasonable aid, and nothing could be more effective than a cross-examination, within proper limits. Aside from this, if the opposing counsel are not satisfied with the correctness of the statements of the witness as to his ability

to give an opinion they are justified in asking for an immediate opportunity to apply the test of cross-examination, and it should be allowed."

In the case before us, the witnesses met the requirements imposed by law, and showed themselves properly qualified to express an opinion as to the value of the land in question, and the subject-matter of their testimony was properly left to the jury, but gave the plaintiff considerably less than either of these witnesses fixed as their idea of the damages.

The assignments of error are overruled, and the judgment is affirmed.