## Palmer *v.* Chester County Gas Company, Appellant.

*Negligence—Gas company—Destruction of shade tree—Evidence— Case for jury.*

1. In an action against a gas company to recover damages for the destruction of a shade tree alleged to be due to gases escaping from the defendant's main in the street, the case is for the jury where the evidence shows that the pipe of the main leaked within a few months after it was laid; that pipes when properly laid would not leak seriously until four or five years after their construction; and that in view of the conditions as to the possible settling of the ground, present and apparent at the time the pipe was laid, due care was not used to secure the joints by lead instead of cement, so as to prevent leaking from the strain upon the pipe that was reasonably to be anticipated.

2. In such a case the fact that the plaintiff was not a patron of the defendant is immaterial.

Argued Nov. 22, 1911. Appeal, No. 172, Oct. T., 1911, by defendant, from judgment of C. P. Chester Co., Jan. Term, 1911, No. 43, on verdict for plaintiff in case of Elizabeth Wood Palmer v. Chester County Gas Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for injuries to a shade tree. Before BUTLER, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $200. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*J. Frank E. Hause,* with him *W. Roger Fronefield,* for appellant, cited: Hughes v. Fayette Mfg. Co., 214 Pa. 282; East End Oil Co. v. Torpedo Co., 190 Pa. 350; Cavanaugh v. Light Co., 226 Pa. 86; Patterson Coal & Supply Co. v. Rys. Co., 37 Pa. Superior Ct. 212.

*C. Wesley Talbot,* for appellee, cited: Koelsch v. Philadelphia County, 152 Pa. 355; Shafer v. Lacock, Hawthorn & Co., 168 Pa. 497; Fisher v. Ruch, 12 Pa. Superior Ct. 240; Lampert v. Laclede Gas Light Co., 14 Mo. App. 376.

OPINION BY RICE, P. J., April 15, 1912:

The plaintiff alleged in her statement of claim that the defendant built and constructed its line of pipe in the street along her property in such negligent and careless manner that large quantities of poisonous gases were permitted to escape therefrom, which gases through the negligence of the defendant came in contact with the fibers and roots of a large and ornamental shade tree growing upon her premises, and by reason thereof the tree was killed; whereby she and her family were deprived of the comfort and enjoyment afforded by it and her property was injured in value in the sum of $500, for which she brought suit. That she could recover upon proof of the facts alleged is beyond question. The case of Langford v. People's Light Co., 43 Pa. Superior Ct. 394, is authority for that proposition, if authority is needed. Nor does the fact that she was not a patron of the defendant affect that precise question. Whether the rule as to the burden of proof or as to the degree of care the defendant was bound to exercise would have been different if she had been a patron and one purpose of the pipe was to furnish gas to her premises, is a question upon which it is unnecessary to express an opinion. It is enough for the purpose of this case to say that it was not a fact essential to recovery by her. But as she was not a patron and there was no contract relation between her and the defendant, the latter owed her no duty differing in degree or kind from that which it owed to all other owners of property abutting on the street. Further, as the statement of claim alleged negligent construction, this fact was essential to recovery under the pleadings and was not to be inferred from the mere fact that the pipe leaked.

Thus far we agree with appellant's counsel. Nevertheless, the fact that the pipe leaked within a few months after it was laid was rendered pertinent to the question of negligent construction by the evidence, if the jury believed it, that a gas main properly constructed will not, ordinarily, leak until four or five years after its construction. A witness qualified by training and experience to speak upon the subject testified: "If it is properly laid and carefully calked, and with sufficient lead in the joints, I should say it would not leak seriously within a year, or five or ten years, if properly laid with heavy pipe." The right of the plaintiff to have the question as to negligent construction submitted to the jury, does not rest solely on this testimony, or on the rule applied in Fisher v. Ruch, 12 Pa. Superior Ct. 240, and Matthews v. Pittsburg & Lake Erie R. R. Co., 18 Pa. Superior Ct. 10. This is so well shown in Judge BUTLER's opinion overruling the motion for judgment non obstante veredicto that we quote therefrom at length: "According to plaintiff's witnesses, the main leaked at the two joints immediately east and west of the tree, each of these joints being eight to ten feet from the tree; according to defendant's superintendent and street foreman, but one joint, located twenty feet west of the tree, was leaking. They testified, however, that they put in new joints not only at the point where they said there was a leak, but at the other two points, and instead of using cement, as was originally done, they substituted at all three joints, lead, which the superintendent testified had greater tensile strength than cement, and was used in closing the three joints because he thought there might be a further settling of the ground there that would cause a strain on the pipe. He and the street foreman gave it as their opinion that the leakage had been caused by settling and consequent strain on the pipe. They both testified in answer to rather leading questions by defendant's counsel, that at the point of leakage when the main was laid, it did not look as if the ground would settle,

but the superintendent testified that on account of the nature of the ground at that point he deemed that lead would be the most advisable joint to use; that the ground was not a clay, that it was more of a clayey loam; that the ground on High street, 100 feet away, appeared to be a more clayey, a harder, more compact soil; and the street foreman testified that they used lead instead of cement because they were afraid the ground would settle there, that it looked as if it might settle again, and they thought it better to use lead in this one particular place on account of the ground being soft there. If they had renewed with lead only the one joint which they said leaked, it might be argued that the only indication of a disposition to settle was the fact of settling and leaking at that one point; but when it appears that they substituted lead for cement at the two joints further east, where they said no settling or leaking had occurred, some ground arose for believing that the character of the ground thereabout must have suggested that there would be some settling, and that the exercise of due care would have resulted in the use of lead at these joints when the pipe was laid. Whether in the exercise of due and proper care, having in mind the dangerous character of the agent they were conveying through their main, their attention being particularly called to the occasion for observing every precaution to prevent leakage by the conditions of the ordinance under which they enjoyed the use of the street they should, with the conditions then present, have foreseen some danger of settling where the leakage subsequently occurred, and have used lead instead of cement, was a proper question for the jury under all the evidence. It must be remembered that the only explanation defendant offered for the leaking, was a settling of the ground; no proof was presented that any conditions had supervened since the laying of the pipe that had caused the settling. Apparently the ground just as it was viewed by defendant at the time of laying the pipe, had subsequently settled because of its inherent qualities."

We all concur in this conclusion. It does not rest on the application of the maxim res ipsa loquitur nor on a presumption of negligence from the failure of the defendant to satisfactorily account for the leaking. It rests on evidence fairly tending to show that in view of the conditions present and apparent at the time the pipe was laid, due care was not used to secure the joints in such manner as to prevent leaking from the strain upon the pipe that was reasonably to be anticipated. The evidence brings the case fairly within the doctrine as thus stated by Justice BROWN in Lanning v. Pittsburg Railways Co., 229 Pa. 575: "The appellees were not required to establish the negligence of the defendant by direct or positive proof. Like any other fact negligence may be, and often is, established by circumstantial evidence; but when such proof is relied upon, it must fairly and reasonably lead to the conclusion that the specific act of negligence existed, as charged, and was the proximate cause of the injury sustained." The evidence came up to this standard. It follows that the question was for the jury, and as neither of the two assignments brings the manner of its submission under review they must be overruled.

The judgment is affirmed.